## BURNET, COMMISSIONER OF INTERNAL REVENUE, v. GUGGENHEIM.

No. 283.   Argued January 11, 1933.—Decided February 6, 1933.

*Assistant Attorney General Youngquist*, with whom *Attorney General Mitchell* and *Messrs. Sewall Key, Hayner N. Larson*, and *Erwin N. Griswold* were on the brief, for petitioner.

*Mr. Elihu Root, Jr.*, with whom *Messrs. George E. Cleary, Elihu Root*, and *J. Harry Covington* were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The question to be decided is whether deeds of trust made in 1917, with a reservation to the grantor of a power of revocation, became taxable as gifts under the Revenue Act of 1924 when in 1925 there was a change of the deeds by the cancellation of the power.

On June 28, 1917, the respondent, a resident of New York, executed in New Jersey two deeds of trust, one for the benefit of his son, and one for the benefit of his daughter. The trusts were to continue for ten years, during which period part of the income was to be paid to the

beneficiary and part accumulated. At the end of the ten year period the principal and the accumulated income were to go to the beneficiary, if living; if not living, then to his or her children; and if no children survived, then to the settlor in the case of the son's trust, and in the case of the daughter's trust to the trustees of the son's trust as an increment to the fund. The settlor reserved to himself broad powers of control in respect of the trust property and its investment and administration. In particular, there was an unrestricted power to modify, alter or revoke the trusts except as to income, received or accrued. The power of investment and administration was transferred by the settlor from himself to others in May, 1921. The power to modify, alter or revoke was eliminated from the deeds, and thereby canceled and surrendered, in July, 1925.

In the meanwhile Congress had passed the Revenue Act of 1924 which included among its provisions a tax upon gifts. "For the calendar year 1924 and each calendar year thereafter . . . a tax . . . is hereby imposed upon the transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly," the tax to be assessed in accordance with a schedule of percentages upon the value of the property. 43 Stat. 253, 313, c. 234, §§ 319, 320; 26 U. S. Code, §§ 1131, 1132.

At the date of the cancellation of the power of revocation, the value of the securities constituting the corpus of the two trusts was nearly $13,000,000. Upon this value the Commissioner assessed against the donor a tax of $2,465,681, which the Board of Tax Appeals confirmed with a slight modification due to a mistake in computation. The taxpayer appealed to the Court of Appeals for the second circuit, which reversed the decision of the Board and held the gift exempt. 58 F. (2d) 188. The case is here on certiorari.

On November 8, 1924, more than eight months before the cancellation of the power of revocation, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, adopted and promulgated the following regulation: "The creation of a trust, where the grantor retains the power to revest in himself title to the corpus of the trust, does not constitute a gift subject to tax, but the annual income of the trust which is paid over to the beneficiaries shall be treated as a taxable gift for the year in which so paid. Where the power retained by the grantor to revest in himself title to the corpus is not exercised, a taxable transfer will be treated as taking place in the year in which such power is terminated." Regulations 67, Article I.

The substance of this regulation has now been carried forward into the Revenue Act of 1932, which will give the rule for later transfers. Revenue Act of 1932, c. 209; 47 Stat. 169, 245; § 501 (c).[1]

We think the regulation, and the later statute continuing it, are declaratory of the law which Congress meant to establish in 1924.

"Taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers*, 281 U. S. 376, 378. Cf. *Chase National Bank* v. *United States*, 278 U. S. 327; *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Tyler* v. *United States*,

---

[1] Sec. 501(c): "The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift."

281 U. S. 497, 503; *Burnet* v. *Harmel*, 287 U. S. 103; *Palmer* v. *Bender*, 287 U. S. 551. While the powers of revocation stood uncanceled in the deeds, the gifts, from the point of view of substance, were inchoate and imperfect. By concession there would have been no gift in any aspect if the donor had attempted to attain the same result by the mere delivery of the securities into the hands of the donees. A power of revocation accompanying delivery would have made the gift a nullity. *Basket* v. *Hassell*, 107 U. S. 602. By the execution of deeds and the creation of trusts, the settlor did indeed succeed in divesting himself of title and transferring it to others (*Stone* v. *Hackett*, 12 Gray [Mass.] 227; *Van Cott* v. *Prentice*, 104 N. Y. 45; 10 N. E. 257; *National Newark & Essex Banking Co.* v. *Rosahl*, 97 N. J. Eq. 74; 128 Atl. 586; *Jones* v. *Clifton*, 101 U. S. 225), but the substance of his dominion was the same as if these forms had been omitted. *Corliss* v. *Bowers, supra.* He was free at any moment, with reason or without, to revest title in himself, except as to any income then collected or accrued. As to the principal of the trusts and as to income to accrue thereafter, the gifts were formal and unreal. They acquired substance and reality for the first time in July, 1925, when the deeds became absolute through the cancellation of the power. The argument for the respondent is that Congress in laying a tax upon transfers by gift made in 1924 or in any year thereafter had in mind the passing of title, not the extinguishment of dominion. In that view the transfer had been made in 1917 when the deeds of trust were executed. The argument for the Government is that what was done in 1917 was preliminary and tentative, and that not till 1925 was there a transfer in the sense that must have been present in the mind of Congress when laying a burden upon gifts. Petitioner and respondent are at one in the view that from the extinguishment of the power there came about a change of legal rights and a shifting

of economic benefits which Congress was at liberty, under the Constitution, to tax as a transfer effected at that time. *Chase National Bank* v. *United States, supra; Saltonstall* v. *Saltonstall, supra; Tyler* v. *United States, supra; Corliss* v. *Bowers, supra.* The question is not one of legislative power. It is one of legislative intention.

With the controversy thus narrowed, doubt is narrowed too. Congress did not mean that the tax should be paid twice, or partly at one time and partly at another. If a revocable deed of trust is a present transfer by gift, there is not another transfer when the power is extinguished. If there is not a present transfer upon the delivery of the revocable deed, then there is such a transfer upon the extinguishment of the power. There must be a choice, and a consistent choice, between the one date and the other. To arrive at a decision, we have therefore to put to ourselves the question, which choice is it the more likely that Congress would have made? Let us suppose a revocable transfer made on June 3, 1924, the day after the adoption of the Revenue Act of that year. Let us suppose a power of revocation still uncanceled, or extinguished years afterwards, say in 1931. Did Congress have in view the present payment of a tax upon the full value of the subject matter of this imperfect and inchoate gift? The statute provides that upon a transfer by gift the tax upon the value shall be paid by the donor (43 Stat. 316, c. 234, § 324), and shall constitute a lien upon the property transferred. 43 Stat. c. 234, §§ 324, 315. By the act now in force, the personal liability for payment extends to the donee. Act of June 6, 1932, c. 209, § 510; 47 Stat. 249; 26 U. S. Code, § 1136 (j). A statute will be construed in such a way as to avoid unnecessary hardship when its meaning is uncertain. *Hawaii* v. *Mankichi,* 190 U. S. 197, 214; *Sorrells* v. *United States,* 287 U. S. 435. Hardship there plainly is in exacting the immediate payment of a tax upon the value of the principal when nothing has been

done to give assurance that any part of the principal will ever go to the donee. The statute is not aimed at every transfer of the legal title without consideration. Such a transfer there would be if the trustees were to hold for the use of the grantor. It is aimed at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall.

The respondent invokes the rule that in the construction of a taxing act doubt is to be resolved in favor of the taxpayer. *United States* v. *Merriam,* 263 U. S. 179; *Gould* v. *Gould,* 245 U. S. 151. There are many facets to such a maxim. One must view them all, if one would apply it wisely. The construction that is liberal to one taxpayer may be illiberal to others. One must strike a balance of advantage. It happens that the taxpayer before us made his deeds in 1917, before a transfer by gift was subject to a tax. We shall alleviate his burden if we say that the gift was then complete. On the other hand, we shall be heightening the burdens of taxpayers who made deeds of gift after the Act of 1924. In making them, they had the assurance of a treasury regulation that the tax would not be laid, while the power of revocation was uncanceled, except upon the income paid from year to year. They had good reason to suppose that the tax upon the principal would not be due until the power was extinguished or until the principal was paid. If we disappoint their expectations, we shall be illiberal to them.

The tax upon gifts is closely related both in structure and in purpose to the tax upon those transfers that take effect at death. What is paid upon the one is in certain circumstances a credit to be applied in reduction of what will be due upon the other, 43 Stat. 315, § 322, 26 U. S. C., § 1134. The gift tax is Part II of Title III of the Revenue Act of 1924; the Estate Tax is Part I of the same title. The two statutes are plainly *in pari materia.* There has been a steady widening of the concept of a transfer for the purpose of taxation under the provisions of Part I.

*Tyler* v. *United States, supra; Chase National Bank* v. *United States, supra; Saltonstall* v. *Saltonstall, supra;* cf. *Bullen* v. *Wisconsin,* 240 U. S. 625. There is little likelihood that the lawmakers meant to narrow the concept, and to revert to a construction that would exalt the form above the substance, in fixing the scope of a transfer for the purposes of Part II. We do not ignore differences in precision of definition between, the one part and the other. They cannot obscure identities more fundamental and important. The tax upon estates, as it stood in 1924, was the outcome of a long process of evolution; it had been refined and perfected by decisions and amendments almost without number. The tax on gifts was something new. Even so, the concept of a transfer, so painfully developed in respect of taxes on estates, was not flung aside and scouted in laying this new burden upon transfers during life. Congress was aware that what was of the essence of a transfer had come to be identified more nearly with a change of economic benefits than with technicalities of title. The word had gained a new color, the result, no doubt in part, of repeated changes of the statutes, but a new color none the less. Cf. *Towne* v. *Eisner,* 245 U. S. 418, 425; *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50; *Gooch* v. *Oregon Short Line R. Co.,* 258 U. S. 22, 24; *Hawks* v. *Hamill, ante,* 52, 57.

The respondent finds comfort in the provisions of § 302 (d) of the Act of 1924, governing taxes on estates.[2]

---

[2] By section 302 (d), the gross estate of a decedent is to be taken as including the subject of any trust which he has created during life " where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for a fair consideration in money or money's worth."

By section 302 (h), the foregoing subdivision (d), as well as many others, is declared to " apply to the transfers, trusts, estates, interests,

He asks why such a provision should have been placed in Part I and nothing equivalent inserted in Part II, if powers for purposes of the one tax were to be treated in the same way as powers for the purposes of the other. Section 302 (d) of the Act of 1924 is in part a reënactment of a section of the Revenue Acts of 1918 and 1921, though it has been changed in particulars. 40 Stat. 1097, c. 18, § 402 (c); 42 Stat. 227, c. 136, § 402 (c). Cf. *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339. It is an outcome of that process of development which has given us a rule for almost every imaginable contingency in the assessment of a tax under the provisions of Part I. No doubt the draftsman of the statute would have done well if he had been equally explicit in the drafting of Part II. This is not to say that meaning has been lost because extraordinary foresight would have served to make it clearer. Here as so often there is a choice between uncertainties. We must be content to choose the lesser. To lay the tax at once, while the deed is subject to the power, is to lay it on a gift that may never become consummate in any real or beneficial sense. To lay it later on is to unite benefit with burden. We think the voice of Congress has ordained that this be done.

Precedents are cited as opposed to our conclusion. We find none of them decisive.

*United States* v. *Field,* 255 U. S. 257, holds that under the Revenue Act of 1916 (39 Stat. 777, c. 463), the subject of a power created by another is not a part of the estate of the decedent to whom the power was committed. It does not hold that a revocable conveyance *inter vivos* is a perfected transfer by gift that will justify the immediate imposition of a tax upon the value. There was no such question in the case.

---

rights, powers, and relinquishments of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this act."

*Jones* v. *Clifton,* 101 U. S. 225, holds that a power of revocation in a deed of conveyance from a husband to his wife does not avail without more to invalidate the transaction as one in fraud of creditors. A transfer within the meaning of a taxing act may or may not be one within the statute of Elizabeth.

We are referred to cases in the state courts, from Pennsylvania and New Jersey. *In re Dolan's Estate,* 279 Pa. St. 582; 124 Atl. 176; *In re Hall's Estate,* 99 N. J. Law 1; 125 Atl. 246. In neither did the court decide that a conveyance *inter vivos* was taxable as a present gift when the conveyance was subject to revocation at the pleasure of the grantor. No such statute was involved. In each the ruling was that upon the death of the grantor the subject of the conveyance was not taxable as part of his estate, and hence not taxable at all. The ruling might have been different if a choice had been necessary between taxing the conveyance, or its subject, while the power was outstanding, and taxing it later on. New channels of thought cut themselves under the drive of a dilemma.

A decision of the Court of Claims, *Means* v. *United States,* 69 Ct. Cls. 539; 39 F. (2d) 748, upholds the contention of the Government that within the meaning of the act of Congress the termination by a settlor of the power to revoke a trust is a transfer of the property and as such subject to taxation.

The argument for the respondent, if pressed to the limit of its logic would carry him even farther than he has claimed the right to go. If his position is sound that a power to revoke does not postpone for the purpose of taxation the consummation of the gift, then the income of these trusts is exempt from the tax as fully as the principal. What passed to the beneficiaries was the same in either case, an interest inchoate and contingent till rendered absolute and consummate through receipt or accrual before the act of revocation. Congress did not mean that

recurring instalments of the income, payable under a revocable conveyance which had been made by a settlor before the passage of this statute, should be exempt, when collected, from the burden of the tax.

The judgment is

*Reversed.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER are of opinion that the termination of the donor's power of revocation was not a transfer by gift of any property within the meaning of the statute, and that the judgment of the Circuit Court of Appeals should be affirmed.