## LESTER v. UNITED STATES.

### No. 45021.

Court of Claims.

Nov. 12, 1940.

536

538

Wharton E. Lester, of Washington, D. C., per se.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, and WHITAKER, Judges.

WHITAKER, Judge.

The plaintiff in 1938 transferred to his three daughters certain property, upon which transfers the Commissioner of Internal Revenue assessed a gift tax, which was paid by plaintiff, and for which he now sues, on the theory that the transfers were not gifts, but were accountings made by him as trustee. This presents the sole question in the case.

Up until the time of her death in 1918 plaintiff's wife had given him from time to time property of a total value of about $53,000, and at her death the plaintiff received under the intestacy laws of the District of Columbia an additional sum of $6,900, making a total amount received by him from his wife of approximately $60,000. The first gift of $10,000, the plaintiff says, was made to him in order to establish credit for him, but that the later gifts to him were made with the understanding that he would "see to it that her children * * * received all of her property." He says he "agreed that all of her property, including that which she had theretofore given me, would be held by me in trust for the benefit of her children, our children." Plaintiff says that it was this property which he transferred in 1938, and that, therefore, the transfers were not gifts, but accountings by him as trustee.

During his wife's lifetime and from the date of her death in 1918 until the first of 1930 plaintiff treated as his own all of the property which he had received from his wife, receiving the income on it, paying taxes on it, disposing of it, enjoying it, and in all other respects treating it as his own. His actions are wholly inconsistent with the idea that he held the property in trust. Cf. Housman v. Commissioner, 2 Cir., 105 F.2d 973.

In the latter part of 1929 or the first of 1930, about twelve years after his wife's death, he determined to provide for their children in accordance with his promise to his wife. He figured that he had received from her about $60,000 of property, and that the interest thereon from the date of her death amounted to around $45,000. (He does not undertake to say what the actual income was.) The total of about $105,000, plus about $45,000 which he withdrew from a Building and Loan Association, where he had invested it for the benefit of his children, a total of $150,000, he gave to his three children in equal parts. Simultaneously, at plaintiff's direction, each of his children executed a trust to the National Savings and Trust Company, trustee, conveying to it the property they

had just received from their father under instruments containing provisions that the income from the property should be paid to plaintiff for his life and thereafter to the settlors during their lifetimes, and that the corpus should be paid to such of the settlors' issue as they might direct by their last wills and testaments, etc. The trusts were irrevocable by the settlors, but could be terminated by the plaintiff under the following provision:

"And to the end that the grantor's said father shall and may be provided for as he may in his sole judgment consider necessary or advisable, said trustee is hereby authorized and directed to pay and deliver unto grantor's said father, Wharton E. Lester, any part or all of the corpus of the trust fund, upon his request or requests in writing, anything to the contrary herein notwithstanding, * * *."

Plaintiff testified that on November 30, 1931 one of the officers of the Trust Company advised him that under the terms of these trust instruments his daughters were not protected from losing the principal by virtue of future improvidences. For this reason plaintiff says he terminated the trusts and received from the trustee the corpus of each of them. Immediately thereafter plaintiff executed as settlor three trusts for the benefit of each of his daughters covering the same property. Each of the trusts contained the same provisions as to the disposition of the income and the corpus as had been contained in the trusts executed by his daughters. In each of these trusts plaintiff reserved the power of revocation.

The trusts continued until October 1, 1934, when plaintiff revoked them. The trustee then paid to the plaintiff the sum of $45,550 in cash, and turned over the balance to him in notes of the National Savings and Trust Company, in which the corpus of the trusts had been invested. The cash the plaintiff deposited in his own account and commingled it with his other funds.

In the following year, and in each year thereafter, including the year 1938, the plaintiff made absolute transfers of property to his three daughters. On the transfers made in 1938 the plaintiff has been assessed a gift tax, for which he now sues.

The plaintiff says, and his testimony is supported by that of one of his daughters, that at the time each of his daughters executed the trusts in 1930 he agreed that he would hold for their use and benefit all income received by him from the trusts and also the corpus, if he should ever receive it. He, therefore, says that the amounts paid to them in 1938 were not gifts, but were accountings to them made by him under these oral trusts to his daughters. If this property was in fact received by the plaintiff in trust for the benefit of his daughters, then the transfers by him in 1938 of this property were not gifts, but accountings by him as trustee, and he would not be liable for the gift tax assessed.

Plaintiff's actions, however, are inconsistent with the idea that he received this property in trust; and these actions were acquiesced in by his daughters. As has been stated, the cash which he received upon revocation of the trusts executed by him to the National Savings and Trust Company was commingled with his own funds—something not permitted to a trustee. The income which he received from the property was commingled with his own funds—something not permitted to a trustee. He testified that he kept no account of the income received—something a trustee is obliged to do. Plaintiff does not know today how much income he has received from this property. He says that he had computed the amount due them at 3 percent, but that since then he had found that "my income was a trifle more than that," and he proposes an adjustment on the basis of his income. He proposes to settle with his daughters, not on the basis of the income earned by the trust property, but on the basis of his own income, including that from the trust property.

Plaintiff is an honorable, respected member of the bar of the District of Columbia, and we are confident that had he in fact held this property in trust he would have meticulously observed every obligation of the trustee relationship. We regard his action in commingling these funds with his own and in failing to keep an account of the income from them, not as a dereliction of his duty as trustee, but as a clear indication of the fact that he did not regard them as trust funds, but rather as his own. His actions, as stated, were acquiesced in by his daughters.

Not only did the plaintiff commingle the so-called trust income with his own, but he paid the income tax thereon—something he never would have done had the income in fact belonged to his daughters and not to him. He paid a gift tax on approximately $85,000 which he transferred to his

three daughters in 1935—something he would not have done had this money belonged to his daughters. Plaintiff testified that he then learned that he could transfer to his daughters $15,000 a year without being subject to a gift tax, and in each of the years 1936 and 1937 plaintiff transferred just that amount.

In addition, in 1938 plaintiff wrote a letter to the Commissioner of Internal Revenue inquiring what, if anything, he could do at that time to satisfy the Commissioner that gifts which he had previously made to his daughters, and which he might thereafter make, were not gifts made in contemplation of death. In that letter he said, "I have made gifts of property of a value not in excess of Five Thousand Dollars each year to each of my three daughters," and that he intended "making each of them further gifts each year." He said that "None of these gifts have been made, or will be made, in contemplation of death," but that the reason for them, among others, was "natural love and affection; to enable each of my daughters to have definite benefits from property I owned, now own, or may hereafter own; * * *." Here we have an express statement that he regarded the property from which the gifts had been made as his own.

■■ We have no doubt that it was his own. Never at any time, even when plaintiff made the original transfers to his daughters in 1930, did plaintiff lose control of the property, nor surrender the beneficial ownership thereof. The trusts executed by him in November 1931 contained the power of revocation. Under such a trust the property is to be regarded as a part of his estate. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Means v. United States, 39 F.2d 748, 69 Ct.Cl. 539; Id., 282 U.S. 849, 51 S.Ct. 28, 75 L.Ed. 753; Cf. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. After the trusts were revoked his ownership thereof was certainly no less than it had been before.

■ Whatever the moral obligation plaintiff may have been under, certainly he was under no legal obligation to make to his daughters the transfers upon which the gift tax has been assessed. A moral obligation is not a sufficient consideration to avoid the incidence of the tax.

For the reasons stated plaintiff's petition must be dismissed. It is so ordered.