CAMELIA I. H. CERF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108434. Promulgated May 11, 1943.

*Ewing Everett, Esq.,* and *Malcolm Johnson, Esq.,* for the petitioner.
*Robert S. Garnett, Esq.,* for the respondent.

OPINION.

SMITH, *Judge:* This proceeding involves a gift tax deficiency of $4,377.80 for 1932. The respondent has determined that petitioner made gifts to her husband of the income for her life, or the right to receive the income for life, of four trusts which her husband had created for the benefit of her and their four children. The facts are stipulated.

Petitioner is a resident of the State of New Jersey and is the wife of Louis A. Cerf, who is also a resident of that state. She filed her gift tax return for 1932 with the collector of internal revenue for the fifth district of New Jersey.

From 1910 to 1927 Louis A. Cerf acted as general agent for the Mutual Benefit Life Insurance Co. of Newark, New Jersey, under an agency contract which entitled him to certain renewal commissions

on policies of insurance written for the company by him or his agents in Greater New York and vicinity. In 1927 he gave the required notice to the company of termination of the contract and his resignation as general agent. All renewal commissions which became due him after the effective date of his resignation were paid to him by the company up to November 15, 1928. Thereafter, pursuant to his instructions to the company, one-half of the renewal commissions as they became due were paid to the four trusts referred to above.

The four trusts were created by Louis A. Cerf (hereinafter referred to as the donor) on October 1, 1928, each for the benefit of petitioner and one of their four children. To each trust the donor transferred a one-eighth portion of the renewal commissions to become due and payable to him under his agency contract with the insurance company. The commissions were to constitute the corpora of the trusts and the net income of the trusts was to be paid to petitioner for life if she should accept it, otherwise it was to be added to corpus. Petitioner was given a general power of appointment to be exercised by will over the income of the trusts during the life of the donor. In the absence of such appointment the income was to be added to corpus. After the death of petitioner and the donor the income was to be paid to the child named as beneficiary for such child's life. Upon the death of the child the corpus was to be distributed in accordance with the provisions of the will of such child, or, in the default of such appointment, to the heirs at law of such child. The trust agreement creating the trust for petitioner and her daughter, Katherine Sophia Cerf, which, it is stipulated, is representative of the other three trusts, reads in part as follows:

1. The Donor hereby assigns to the Trustees a one-eighth interest in the commissions hereafter accruing with respect to renewal premiums under contracts of the Donor with the Mutual Benefit Life Insurance Company of Newark, New Jersey, In Trust, Nevertheless, for the following uses and purposes: During the trust term as hereinafter defined, to collect and receive said one-eighth interest in said commissions (all payments so received by the Trustees from the Mutual Benefit Life Insurance Company of Newark, New Jersey being considered as principal or capital and not as income), to invest and reinvest the same, to hold and manage such investments and reinvestments, to collect and receive the income therefrom and to pay the net income to Camelia I. H. Cerf during the term of her natural life if she shall accept it, (the right to so accept such income or any part thereof to continue in Camelia I. H. Cerf during the term of her natural life, notwithstanding one or more refusals thereof) or if she shall not have accepted such income or any part thereof at the time of her decease to add it at that time to the corpus of the trust; and upon her death and so long as the Donor shall be living, to pay the net income to such person or persons (including corporations) as she shall by her last will and testament, duly probated, direct or appoint, and in default of such direction or appointment to add the undistributed net income to the corpus of the trust; and thereafter (the Donor and his wife having died) to pay the net income to Katherine Sophia Cerf during the term of her natural

life; and upon the death of the survivor of the Donor, his wife, and their said daughter, to transfer, pay over and distribute the principal or capital of the fund then held in trust by the surviving trustee hereunder to and among such person or persons (including corporations) and in such amounts and shares as said daughter shall by her last will and testament, duly probated, direct or appoint, or in default of such direction or appointment, to and among those persons who would have been entitled to receive the same, and in the amounts and shares to which they would have been so entitled if the said daughter had then died intestate, a resident of New Jersey, seized and possessed of said fund in her own right.

The donor, the petitioner, and the Savings Investment & Trust Co. were named trustees of each of the trusts. Each trust was to continue for the life of the survivor of the donor, the petitioner, and the child named as beneficiary. There was reserved to the donor the right to amend or revoke the trusts only with the written consent of the petitioner and "in conjunction with said beneficiary [the petitioner]." Each of the trust agreements was signed by the donor, the petitioner, and the Savings Investment & Trust Co., as trustees.

On June 30, 1932, with the written consent of the petitioner, the donor executed amendments to all four of the trusts which provided that upon written demand of the donor during his lifetime the trustees would pay to him or his nominees or assigns (1) "the sum of $7,800.00 out of the monies now in the hands of said Trustees, derived from the sale of government securities"; (2) "the sum of $1,700.00 from the monies now due and payable under the terms of said trust to said Camelia I. H. Cerf"; (3) "all commissions mentioned in paragraph 1 of said Deed of Trust dated October 1, 1928 hereafter paid to said Trustees"; and (4) "all net income of whatever nature or from whatever source hereafter derived."

On August 23, 1932, the donor, with the written consent of petitioner, made further amendments to each of the trusts which gave him the right to amend or revoke any or all of them at his pleasure and without petitioner's consent.

On August 19, 1935, the donor made all of the above described trusts irrevocable and gave up all of his rights in the trust corpus and income.

Over the period June 30, 1932, to August 19, 1935, the donor from time to time demanded and received all of the income of all of the trusts. The net income of the trusts from investments for the period June 30, 1932, to December 31, 1932, amounted to $5,918.59. In addition to this income the trustees received $28,958.29 of renewal commissions during that period, which were treated as principal.

The petitioner filed a gift tax return for 1932 in which she reported total gifts, other than charitable, of $42,079.51. These gifts included a gift to the donor, Louis A. Cerf, made effective by the trust amendments of June 30, 1932, of the income of the four trusts for his life at

a valuation of $26,601.56 and gifts to each of the four children of the income of the trust of which each child was a beneficiary for a period measured by the excess of petitioner's life expectancy over the life expectancy of the donor, valued in the aggregate at $15,477.95. She claimed against such gifts total exclusions of $20,477.95 and a specific exemption of the balance of $21,601.56. Petitioner stated in her return that she reserved the right to question the obligation to file the return and to contest her liability for any gift tax.

The respondent determined in his deficiency notice that petitioner made two separate gifts to the donor in 1932, one on June 30, 1932, consisting of the income of the trusts for his life, which he valued at $105,714.06, and one on August 23, 1932, consisting of the income of the trusts for the period represented by the excess of the life expectancy of petitioner over that of the donor, which he valued at $60,-867.78. He allowed the petitioner only one exclusion of $5,000.

In his valuation of the gift of June 30, 1932, the respondent determined that the mortgage certificates, stocks, real estate, and cash held by the trustees on that date had a value of $191,498.57 and that the one-half interest in the Mutual Benefit Life Insurance Co. contract which the trusts jointly owned had a present worth of $208,145.77. Discounting the aggregate of those amounts $399,644.34 at 4 percent, and using an annuity or life expectancy factor of 6.61301 (the donor was then 69 years of age), he determined a total present value of $105,714.06 for the gift. The value of the August 23 gift was determined in a similar manner except that an annuity factor of 3.74630 was used, representing the excess of petitioner's life expectancy (petitioner was then 57 years of age), over that of the donor.

It is stipulated in this proceeding that "the value as of June 30, 1932 and August 23, 1932, attributed to the mortgage certificates, stocks, real estate, cash and the one-half interest in the commissions accruing after June 30, 1932, with respect to the renewal premiums under contract of Mr. Cerf with the Mutual Benefit Life Insurance Company as set forth in the statement attached to the deficiency notice is correct."

It is further stipulated that for income tax purposes the respondent has included in the gross income of the donor for 1930, 1931, and 1932 the full amount of the renewal commissions resulting from his agency contract with the insurance company. It is further stipulated that in a prior proceeding before this Court the parties stipulated that the respondent correctly determined that all of the renewal commissions for 1936, 1937, and 1938 were includable in the gross income of the donor for those years.

The petitioner's contentions are in substance that she never acquired any property interests in the trusts and that therefore she made no

gifts to the donor of any property interests when she consented to the amendments by which she relinquished all of her rights in the trusts. She further contends that even if there was a valid gift by her to her husband, either on June 30, 1932, or August 23, 1932, the respondent has erroneously valued such gift or gifts by including in the trust corpora, for the purpose of valuing her life interests in the trusts, the present worth of one-half of the unpaid renewal commissions which were later to become due under the insurance agency contract.

There can be no disagreement, of course, with petitioner's contention that she did not make a gift to her husband in 1932 of anything more than her interests in the trusts. Conversely, it must be admitted, we think, although petitioner contends to the contrary, that she did make a gift to her husband of all of her rights and interests in the trusts. For, by the amendments to the trust agreements to which she voluntarily consented in 1932, she completely relinquished to her husband all of her interests in the trusts, which consisted at the time of the right to receive the income during her life and, should she predecease her husband, the right to appoint the income for the balance of his life. The relinquishment of these rights, petitioner contends, was not a gift to the husband, but, on the other hand, was a refusal to accept gifts of income which her husband as donor of the trusts had offered to her.

Petitioner's contentions, we think, are unsound. There is no doubt that the donor made an absolute gift to the beneficiaries of the trusts of whatever property or property rights that he conveyed to the trustees. A gift is complete when the donor gives up dominion and control over the subject matter of the gift. *Sanford's Estate* v. *Commissioner*, 308 U. S. 39; *Burnet* v. *Guggenheim*, 288 U. S. 280. Petitioner had the absolute right at any time during the donor's lifetime to demand and receive all the income of the trusts for her own use. There was therefore a gift to her of the right to the income of the trusts for life. There is no merit in petitioner's contention that her absolute right to receive the income for life was not the equivalent of a life interest in the income. In *Frueler* v. *Helvering*, 291 U. S. 35, it was said that the test of taxability of income to the beneficiary (under section 219 (d) of the Revenue Act of 1921) "is not receipt of income but the present right to receive it." In *Corliss* v. *Bowers*, 281 U. S. 376, it was said that "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." Also in *Blair* v. *Commissioner*, 300 U. S. 5, the Court said:

The will creating the trust entitled the petitioner during his life to the net income of the property held in trust. He thus became the owner of an equitable interest in the corpus of the property. * * * By virtue of that interest he

was entitled to enforce the trust, to have a breach of trust enjoined and to obtain redress in case of breach. The interest was present property alienable like any other, in the absence of a valid restraint upon alienation. *Commissioner of Internal Revenue* v. *Field* (C. C. A.) 42 F. (2d) 820, 822; *Shanley* v. *Bowers* (C. C. A.) 81 F. (2d) 13, 15. The beneficiary may thus transfer a part of his interest as well as the whole. See Restatement of the Law of Trusts, sections 130, 132 et seq. The assignment of the beneficial interest is not the assignment of a chose in action but the "right, title, and estate in and to property." * * *

See also *Richardson* v. *Commissioner* (C. C. A., 2d Cir.), 121 Fed. (2d) 1; certiorari denied, 314 U. S. 684. A right to receive the income of a trust constitutes an equitable life interest in the trust. *Edith H. Blaney*, 13 B. T. A. 1315; *Grace Scripps Clark*, 16 B. T. A. 453.

None of the trusts could be amended or revoked without petitioner's consent. Her interest was adverse to that of the grantor. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Estate of William Childs*, 44 B. T. A. 1191; *James G. Heaslet*, 47 B. T. A. 1006. The grantor could not of his own free will and without petitioner's consent revest in himself title to any part of the income or corpus of any of the trusts. Cf. *Burnet* v. *Guggenheim, supra.*

The evidence does not show what income of the trusts, if any, was ever requested by or paid to petitioner. But we are not concerned with that question. It was the right of petitioner to receive the income that constituted her interest in the trusts. If an acceptance of such a gift, that is a gift entirely beneficial to the donee, is essential to its validity, we think that petitioner's acquiescence in the trust agreements and her consent to act as one of the trustees of each of the trusts—she signed each of the trust agreements as a trustee—was in itself a sufficient acceptance of the benefits conferred upon her under the trust agreements. Of course, petitioner was free to renounce and to refuse to accept her rights under the trust agreements; cf. *First National Bank of Portland, Executor*, 39 B. T. A. 828; but this she did not do. The amendments which were made to the trust agreements on June 30, 1932, with her written consent, expressly recognized her present right to the accumulated income of the trusts. It was provided in paragraph 2 of the amendment to the Louis A. Cerf trust (there were like amendments to all of the others) that:

Upon written demand made by the Donor during his lifetime, the Trustees shall pay over to him, his nominees or assigns, the sum of $1,700.00 from the monies now due and payable under the terms of said trust to said Camelia I. H. Cerf.

Petitioner did not by these amendments renounce her rights to the income of the trusts for life but merely consented for the donor during his lifetime to have the income which she was entitled to receive under the trust agreements. Since petitioner's life expectancy was greater than that of the donor, she retained a beneficial interest of the excess of her life estate over that of the donor's. If petitioner had received

the income of the trusts in her own right and had then paid it over to the donor, or to any other person, the payment undoubtedly would have constituted a gift. It was none the less so, we think, because made in advance of receipt of the income.

By consenting to the later amendments of August 23, 1932, petitioner gave up all of her remaining rights in the trusts in favor of the donor. This was not a refusal to accept gifts of income. Under the trust agreements she could either receive the income or not as she liked, but if she did not it was to be added to corpus and, in that event, would not revert to the donor. By consenting to the trust amendments and giving full control of both income and corpus to the donor, she in effect assigned to the donor all of her rights as a beneficiary of the trusts. To say that she did not thereby make a gift to the donor and that the donor did not thereby receive anything from her is to ignore the realities of the situation.

The argument is made by petitioner that there was not a present gift to her of the income of the trusts for life, but only a conditional gift, and that there would have been completed periodic gifts from year to year of the income actually paid to her by the trustees. This argument would be sound if the donor had retained the right to change the beneficial interests. See *Commissioner* v. *Warner* (C. C. A., 9th Cir.), 127 Fed. (2d) 913; *Leonard A. Yerkes*, 47 B. T. A. 431. The donor reserved no such right. He could make no change in the trusts without petitioner's consent. As a life beneficiary of the trusts petitioner's interests would have been adversely affected by any amendment diverting either income or corpus of the trusts. The gift to her of the right to receive the income of the trusts was complete at the very time the trusts were established.

In *Brown* v. *Routzahn*, 63 Fed. (2d) 914, one of the cases relied upon by petitioner, it was held that there could not be included in a decedent's gross estate for estate tax purposes a one-third interest in the estate of his predeceased wife where prior to decedent's death and before final distribution of the wife's estate he formally rejected the gift of such one-third interest, although electing to take under the wife's will. The court ruled that decedent had a right to reject the one-third interest at any time before final distribution of the wife's estate and that his act in so doing was not a transfer (in contemplation of death) of an interest in property, but was the exercise of a right to refuse a testamentary gift of property. It is interesting to note, however, that the court observed that, owing to the presumption of the acceptance of a beneficial gift, the value of the one-third interest would have been includable in decedent's gross estate if he had died without having rejected it. As we have already pointed out, the petitioner here never made any rejection of the rights conveyed to her by the trust agree-

ments. While, as the court held in the cited case, there can be no transfer of an interest in property, in contemplation of death or otherwise, where there never has been a receipt of such interest, there may be, and often is, an assignment or transfer of a right to receive income in advance of the actual receipt of it. Cf. *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122. The validity of the assignment of the future income was not questioned in any of those cases. The *Helvering* v. *Eubank* case, *supra*, involved the same kind of assignment as the instant case, that is, an assignment of the right to renewal commissions payable under an insurance agency contract. So, also, did the case of *Van Meter* v. *Commissioner* (C. C. A., 8th Cir.), 61 Fed. (2d) 817, where the court said: "It may be conceded that the assignments legally entitled the assignees to have the renewals."

Petitioner further contends that the act of giving her consent to the amendments to the trusts whereby the donor was given complete control over income and corpus was not a gift to the donor, citing, among other cases, *Edith Evelyn Clark*, 47 B. T. A. 865. In that case the husband created a trust, giving the income to his wife for life with remainder to her children, with a power in the wife to amend the trust in any manner she might choose. We held that the wife's relinquishment of the power to amend was not a transfer of property subject to gift tax. The relinquishment of the power to amend, we said, merely removed a power of defeasance over the interests of the remaindermen, which were already contingently theirs. Here petitioner had more than a mere power to reach the income of the trusts by the exercise of a right to amend. She had a vested equitable interest in the trusts which did not depend upon any amendment to the trusts. The donor to whom she relinquished that right had no interest, conditionally or otherwise, in either the income or corpus of the trusts.

Another of the cases relied upon by the petitioner is *Amelia Solomon*, 43 B. T. A. 234; affd. (C. C. A., 3d Cir.), 124 Fed. (2d) 86, which is cited as controlling in this case.

In the *Solomon* case, *supra*, a husband and wife in 1928 jointly created a trust, the income from which was to be paid to their three children in equal shares for the lives of the children. The trust corpus was then to be distributed to the surviving grandchildren of the settlors. There was expressly reserved to the settlors or to the survivor of them "the right to recover for our own proper use and behoof" the whole or any portion of the income of the trust and also the right to alter or amend the trust and to change the beneficiaries both as to income and principal, except that the settlors could not repossess any of the principal. Each of the settlors contributed approximately 50 percent of the securities which comprised the corpus of the trust. After the death of the husband the wife, in 1935, executed an amend-

ment to the trust agreement making all of the trust income payable to her three children in equal shares for life, the principal then to be distributed to their living lawful issue. By the same instrument the wife declared the trust irrevocable and renounced any right further to amend, alter or revoke the trust. We held, first, that there was no completed gift in trust to the children by either the husband or the wife until 1935, when the wife relinquished her right to amend the trust, citing *Burnet* v. *Guggenheim, supra; Porter* v. *Commissioner*, 288 U. S. 436; *Sanford's Estate* v. *Commissioner, supra.* We further held that the wife made a gift in 1935 of only the one-half portion of the corpus which she herself had contributed to the trust; that as to the half contributed by the husband, she merely relinquished her general power of appointment, which was not the equivalent of making a taxable gift.

The case stands for these principles: First, that there is a completed gift in trust of property when the donor, by amendment to the trust, relinquishes the right to change the beneficiaries—a principle already firmly established by the cases cited—and, second, that the mere relinquishment of a general power of appointment over trust corpus contributed by another is not a transfer of the property for gift tax purposes. In the instant case what petitioner relinquished by consenting to the trust amendments in 1932 was not a power of appointment over the corpora of the trusts but was an equitable interest in the trusts, consisting of the right to receive the income of the trusts for life. She had no power of appointment over the corpora.

In the *Solomon* case, *supra*, the trust agreement provided that all of the income of the trust should be paid to the children of the donors in equal shares, although both of the donors reserved the right during their lives to demand any portion or all of it for their own use. In the instant case the petitioner was the sole income beneficiary of the trusts. Any income not withdrawn by her was to become a part of the trust corpus, to be disposed of as provided for in the trust agreements.

Also in the *Solomon* case, *supra*, the donors or survivors of them reserved the right to amend or revoke the trust, whereas in the instant case the donor reserved no such right except with the consent of the wife, who was a life beneficiary.

What we decided in the *Solomon* case was that the surviving donor did not make a gift of the corpus which had been contributed to the trust by her husband merely by relinquishing her power of appointment over it and her right to recover the income from it for her own use. No question was raised or decided as to whether the wife, by relinquishing her right to receive the income of the trust for life, made a gift to the children of her right to such income.

Petitioner contends, further, that respondent's position that there was a taxable gift to the donor in 1932 of the income of the trusts is

inconsistent with his action in including in the donor's individual tax returns all of the renewal commissions collected by the trustees in prior and subsequent years.

While we assume no obligation to hold the respondent to the path of strict consistency in these matters, it might be pointed out that here it is the renewal commissions paid to the trusts and not the income of the trusts that the respondent has taxed to the donor. We do not have the donor before us in this proceeding and we express no opinion as to his liability for income tax on the renewal commissions which were paid to the trusts. We made no determination of this question in the prior proceeding, referred to above, involving the donor's liability for income tax on the commissions paid to the trusts in 1936, 1937, and 1938. The parties there stipulated the correctness of the respondent's determination.

Prior to the creation of the trusts the right to receive the renewal commissions belonged to the donor, to do with as he might choose. Once having passed from his ownership by gift or otherwise, that right to the commissions, or the income produced from the commissions, or both, could be reconveyed to him like any other property. Whatever may be said of the effect of the overlapping of gift taxes and estate taxes, or gift taxes and income taxes (see *Smith* v. *Shaughnessy*, 318 U. S. 176; *Robinette* v. *Helvering*, 318 U. S. 184; *Sanford's Estate* v. *Commissioner, supra; Herzog* v. *Commissioner* (C. C. A., 2d Cir.), 116 Fed. (2d) 591; *Commissioner* v. *Marshall* (C. C. A., 2d Cir.), 125 Fed. (2d) 943), there can be no doubt as to the requirement of the statute for the imposition of gift taxes upon successive transfers by gift, although the gifts are of the same identical property.

Petitioner contends, finally, that in any event the value of the gift must be only the value of the life income upon the corpora of the trusts at the date of the gifts in 1932 and that the respondent erred in his determination of the value of the gifts by assuming that the income of the trusts would increase as a result of the corpora being increased each year by the receipt of one-half of the renewal commissions due under the insurance agency contract.

Each of the trust agreements provides that "The Donor hereby assigns to the Trustees a one-eighth interest in the commissions hereafter accruing with respect to renewal premiums under contracts of the Donor with the Mutual Benefit Life Insurance Company of Newark, New Jersey." The instructions (Exhibit B attached to stipulation) which the donor gave to the insurance company were:

\* \* \* to pay to the Savings Investment & Trust Company, of East Orange, N. J., as Trustee, one-half of such commissions as shall become due under any former contracts made by you with me, under which I acted as your New York Agent, settlements to be made at the end of each month payable during the succeeding month.

Such payment in one sum to said trustee shall relieve you as to any responsibility concerning the division thereof by said Trust Company pursuant to any trust agreements I may have made with said Trust Company.

*Dated* November 15, 1928.

For the purpose of our present inquiry we do not think that we are required to determine whether the donor conveyed to the four trusts a one-half interest in the contract itself or merely a right to receive one-half of the renewal commissions as they became due. Our question is the value of the petitioner's right to receive the income of the trusts for life. The value of that right depends upon the future earnings of the trusts for the period of petitioner's life, which in turn depends upon the amount of the renewal commissions that will be received by the trusts as corpus. The respondent has made a determination of the value of petitioner's right to the income of the trusts for life on the basic dates of June 30, 1932, and August 23, 1932, as explained above. The only objection which petitioner makes to those valuations is the inclusion in the trust corpora of the value of any of the renewal commissions which had not been received by the trusts at the time the gifts were made.

The use of the value of the trust corpora as a factor in determining the value of petitioner's life interest in the trusts is merely a step in the generally accepted method of evaluating such life interests. The accuracy of the method depends, of course, upon the inclusion in the trust corpora of the value of every property interest and right from which income is to be derived. There can be no doubt, we think, that the donor intended to assign to the several trusts a one-half interest in all of the renewal commissions that were to become payable to him under the agency contract and that the method which he selected for carrying out that purpose was legally sound. Under the assignments the petitioner acquired a life estate in the income of the trusts, which she later gave back to him. The respondent has made a determination of the value of those gifts, which is *prima facie* correct. We think that the respondent properly took into account in making his determination the present value of the income which was to be derived from the renewal commissions subsequently paid or to be paid to the trusts. In the absence of any showing of error in respondent's computation, or the submission of a more accurate computation, we must accept the values determined by the respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*

VAN FOSSAN, *J.*, dissents.

----

LEECH, *J.*, dissenting: The renewal commissions under the general agency insurance contract here were taxable to petitioner's husband as his income—no matter when or to whom they were actually paid.

*Helvering* v. *Eubank*, 311 U. S. 122. Under that decision, I think, for tax purposes all that the husband could have done and did do in 1928 with reference to future renewal commissions was to promise to make a gift of them to the trusts for the wife *after* he received them. In 1932 when the contested gift from petitioner to her husband was made he had, of course, not received renewal commissions due after that time and therefore had made no gift of them. Petitioner could not give that which she did not have. Thus it would follow that the majority is wrong in using those contingent future commission payments to the trust as an element in computing the value of any right petitioner, as beneficiary of the trust, may have given back to her husband. Otherwise, it would seem the husband would be taxable not only upon the full amount of these payments as and when made, but upon a value for his right to receive them at the time the insurance contract under which they were paid to the insurer was delivered. Respondent did not attempt to go that far even in the *Eubank* case.

MURDOCK and HARRON, *JJ.*, agree with this dissent.