OPINION. Van Fossan, Judge: The question to be determined is whether Ethel K. Childers, by the amendment on January 10, 1936, of the trust indenture of May 16,1932, made a taxable gift of the entire trust estate. The petitioners admit that the powers retained by the donor prior to January 10, 1936, subjected her to liability for income tax on the trust income, as determined in Ethel K. Childers, 39 B. T. A. 904; affirmed sub nom. Cox v. Commissioner (C. C. A., 10th Cir.), 110 Fed. (2d) 934; certiorari denied, 311 U. S. 667. They likewise admit that under the doctrine of Sanford’s Estate v. Commissioner, 308 U. S. 39, “The relinquishment of these controls might constitute a taxable gift.” They argue, however, that subsequent to the decision in the Sanford case, Congress, by the enactment of section 502 (b) of the Revenue Act of 1943 and amendment thereof by Joint Resolution of June 29, 1945,[1] rendered the relinquishment of powers of administration and right to change any beneficial interest in trust corpus or income nontaxable. Paragraph sixth in the original trust agreement provided that the donor could alter, amend, or revoke the trust in whole or in part at any time by a written instrument signed by her “and one other beneficiary hereinabove named then sui juris.” That provision was amended June 11, 1932, with the consent of Matie B. Kehrer, one of the beneficiaries, so that thereafter the trust agreement could be amended or revoked in whole or in part, at any time, and from time to time, by the donor “in conjunction with any other beneficiary hereinabove named then sui juris and having a substantial adverse interest in the disposition of the corpus of this Trust Agreement, or the income therefrom.” On January 10, 1936, that provision was again amended. Thereafter the trust agreement could be amended or revoked by the donor “in conjunction with any other individual (but not Trustee) beneficiary hereinabove named then sui juris and having a substantial adverse interest in the dispositon of such part of the corpus of the Trust Estate, or the income therefrom.” The respondent does not contend that the interest of any of the beneficiaries other than the donor is not substantial and adverse. He contends that the amendment of the trust agreement on January 10, 1936, effected a transfer of property taxable as a gift because, in addition to other rights and powers relinquished, the donor also released her right to change any beneficial interest in the trust corpus or income except with the consent of the beneficiary whose interest she might wish to change. The question to be determined is not, therefore, whether the donor’s right of revocation was limited by the required concurrence of a person having a substantial adverse interest, as it was in Estate of Leon M. Gillette, 7 T. C. 219, cited by petitioner. The question is whether the rights and powers retained by the donor in- the trust estate were such as to make the transfer in trust in 1932 incomplete until such rights and powers were released by her on January 10,1936. In Ethel K. Childers, supra, which involved the same original trust prior to the amendment of January 10, 1936, it was held that the income of the trust for 1934 was taxable to the donor under section 167 of the Revenue Act of 1934. Upon appeal, the Circuit Court for the Tenth Circuit held that the power to revest in the grantor title to the whole of the corpus was vested in the donor under the trust instrument and that therefore the whole income of the trust was taxable to her under section 166 of the Revenue Act of 1934. The Circuit Court further held that the trust income was taxable to the. donor under section 22 (a) of the same act. The above decisions are not conclusive here, as argued by respondent. It does not follow that because income of a trust is taxable to the grantor the transfer in trust as to either corpus or income is incomplete for gift tax purposes. “The two taxes are not that closely integrated.” James A. Hogle, 1 T. C. 986, 988; affd. (C. C. A., 10th Cir.), 165 Fed. (2d) 352. Prior to its amendment January 10, 1936, the trust agreement provided that in all matters wherein any discretion was granted to the trustees (the donor and one other), the decision of the donor should be conclusive and binding upon both trustees and beneficiaries. Because of such provision it was within the exclusive power of the donor to pay to any beneficiary only part of his or her allotted share of the income, and to accumulate the balance, which, upon the death of a beneficiary became a part of the trust corpus. The donor could likewise determine the amount and the time when the accumulated income was to be distributed to any beneficiary. It was within her power to pay out such sums from the principal for the comfort, maintenance, and/or education of any beneficiary, of which donor was one, as in her discretion was necessary for such purpose or purposes. The donor was given custody of the trust estate with power to make all investments, including investment in the unsecured note of any individual or firm in which donor was a stockholder, partner, or member, without incurring any liability for any loss resulting therefrom to the trust estate. The donor could determine the mode in which expenses were to be borne as between capital and income and which moneys or property were to be treated as capital or income. Upon termination of the trust the corpus and accumulated income, “regardless for what accounts the same are held,” were to be divided into, five equal parts and distributed to the beneficiaries, if living, or to his or her lawful issue. In the event of complete revocation, the entire corpus and all other property or money of the trust, including all accumulated income, was to revert absolutely to the donor. As stated in Ethel K. Childers, supra, the donor could, while conforming to the terms of the trust agreement, “effectively exclude the other beneficiaries from participation whenever she should so determine.” The donor could recapture the trust corpus and income by exercising her right to invest in her unsecured note without liability for any loss; could recapture the trust principal by using it for her own comfort and maintenance; and could change the portion allotted to each beneficiary by exercising her right to withhold and accumulate the income and use the principal for the comfort, maintenance, and education of any beneficiary. In the Sanford case a trust was created in 1918 in which the grantor reserved to himself the power to terminate the trust in whole or in part or to modify it. In 1919 the grantor surrendered the power to revoke, but reserved the right to modify, but only to designate new beneficiaries other than himself. In 1924, after the effective date of the gift tax statute of 1924, he renounced his power to modify the trust. It was held that the relinquishment in 1924 of control over the disposition of the trust property completed the transfer in trust so as to subject it to the gift tax. In Rasquin v. Humphreys, 308 U. S. 54, following the decision in the Sanford case, it was held that a reservation in a trust, created in August 1934, of power in the donor to designate new beneficiaries other than himself rendered the gift incomplete within the meaning of the gift tax statute of 1932 and not subject to the gift tax imposed thereby. In Smith v. Shaughnessy, 318 U. S. 176, it is stated: The essence of a gift by trust is the abandonment of control over the property put in trust. The separable interests transferred are not gifts to the extent that power remains to revoke the trust or recapture the property represented by any of them, Burnet v. Guggenheim, supra [288 U. S. 280] or to modify the terms of the arrangement so as to make other disposition of the property, Ban-ford v. Commissioner, supra [308 U. S. 39]. A gift in trust is not complete until the donor “cuts the strings by relinquishing his reserved powers” (Higgins v. Commissioner (C. C. A., 1st Cir.), 129 Fed. (2d) 237; certiorari denied, 317 U. S. 658) or “gives up dominion and control over the subject matter of the gift.” Camelia I. H. Cerf, 1 T. C. 1087, 1091; affd. (C. C. A., 3d Cir.), 141 Fed. (2d) 564. It is stated in Helvering v. Hutchings, 312 U. S. 393, that: The gift tax provisions are not concerned with mere transfers of legal title to the trustee without surrender by the donor of the economic benefits of ownership and his control over them. A gift to a trustee reserving to the donor the economic benefit of the trust or the power of its disposition, involves no taxable gift. It is only upon the surrender by the donor of the benefit or power reserved to himself that a taxable gift occurs. * * * In Cerf v. Commissioner, supra, the husband of taxpayer in 1928 created four trusts. Each trust was for the benefit of the wife and one of their four children. The net income of each trust was payable to the wife during her life “if she shall accept it.” Income which had not been accepted by the wife at the time of her death was to be added to corpus. The husband reserved the right to amend or revoke the trusts only with the written consent of his wife and in conjunction with her as beneficiary. In June 1932 each trust was amended with the consent of the wife. The amendment required the trustees, upon written demand of the husband, to pay to him or his nominees or assigns all the income of the trusts. In August 1932 the trusts were again amended with the consent of the wife, giving the husband the right to amend or revoke any or all of the trusts at his pleasure and without his wife’s consent. The court in its opinion stated, in part, as follows: * * * The effect of the June amendments was that Camelia Cerf permitted her hnsband to assume full control over her right to receive the income from the trusts. Thereafter it was he who Would determine who was to get the income. * * * By completely abandoning her control over her income rights in the trusts during Louis Cerf’s lifetime, Camelia Cerf effected a transfer thereof, ReinecJce v, Northern Trust Company, supra, Smith v. Shauglmessy, supra, taxable under § 501. * * The effect of the August amendments was to put Louis Cerf in a position where he could take back what he had once given Camelia Cerf. He had regained the control he had .once relinquished and was for the purposes of the gift tax the owner, in fact/if not in name. Thereafter he had it within his sole power to determine whether Camelia Cerf should or should not receive any income for the period by which her life expectancy exceeded his. This increment of power was effected by Camelia Cerf’s deed in relinquishing the control which she previously had to veto any amendments to the trusts. Her abandonment of this control constituted a transfer of her remaining rights in the income of the trusts. The effect of the two amendments was to subject the taxpayer to a gift tax for the release of her equitable interests, as the Commissioner has asserted and the Tax Court affirmed. [1 T. C. 1087.] Thus, in the instant case, because of powers and rights exercisable by the donor herein under the terms of the trust agreement, she was “for purposes of the gift tax the owner, in fact if not in name,” of the entire trust estate, including the securities donated by two beneficiaries and the accumulated income. As stated in the Sanford case, supra, the essence of a transfer under the gift tax statute “is the passage of control over the economic benefits of property rather than any technical changes in its title.” Hence, the transfer was not complete until the donor on January 10, 1936, relinquished her powers of dominion and control over the trust property and income. James A. Hogle, supra, cited by petitioners, does not support their position. While there are some similarities between that case and this, the determinative factors differ. The question there involved was whether the' Commissioner erred in including in taxable gifts for 1936 to 1940, inclusive, the profits from trading on margin for the accounts of two trusts. The Commissioner argued that, since the income for 1934 through 1937 from marginal trading in the trusts’ accounts was held taxable to taxpayer (Hogle v. Commissioner (C. C. A., 10th Cir.), 132 Fed. (2d) 66), it followed that similar income for the years 1936 through 1940 must first have belonged to the taxpayer and been given by him to the trusts. This Court held that the profits from marginal trading were not includible in taxable gifts of Hogle because such profits, as they were realized, vested in the trusts and not in him, and that he could not make a transfer of them by gift. In support of its conclusion the Court specifically pointed out that: * * * this is not a revocable trust in which the grantor, seeing a potential gain which he could capture for himself by revoking, may be said to have made a gift when he fails to revoke. Nor is it a trust where the grantor has retained the power to determine directly or indirectly which of two or more beneficiaries may receive the income, and finally allowing it to go one way, might be said to have made a gift at that time.' Therein none of the income or principal of the trusts could ever revert to Hogle and he retained no right to alter, to amend, or to change the beneficial interests. The Circuit Court for the Tenth Circuit, in affirming the decision of this Court, stated in part as follows: * * * Hogle never owned or held an economic interest in such income. * * * What, in fact and in reality, Hogle gave to the trusts in the taxable years was his expert services in carrying on the trading, personal services in the management of the trusts. Hogle could give or withhold his personal services in carrying on trading on margin for the trusts. * * * There was no transfer directly or indirectly from Hogle to the trusts of title to, or other economic interest in, the income from trading on margin, having the quality of a gift. In short there was no transfer directly or indirectly by Hogle to the trust of property or property rights. On the contrary, here the donor owned and held an economic interest in the trust estate. The donor, after transfer of property in trust, retained practically as absolute control of the trust estate as though no trust had been created. She continued in possession and control and, distributed or withheld economic benefits as she determined. She could utilize and recapture the trust estate for her own purposes and benefit. She could and, on January 10, 1936, by the amendment of the trust instrument, did make an effective transfer of her economic interest in the trust estate having the quality of a gift. In view of our conclusion, subsection (c), inserted in section 501 of the Revenue Act of 1932 by section 502 (b) of the Revenue Act of 1943, is not applicable and the donor is not entitled to its benefit. The purpose of such subsection was to relieve from the gift tax the transfer or relinquishment of the power or control with respect to the distribution of trust property or income therefrom as involved in the Sanford and Humphreys cases, supra. S. Rept. No. 627, 78th Cong., 1st Sess. (1944 C. B. 993, 997, 1040-1). It was not intended-and does not purport to relieve from the gift tax a grantor relinquishing the power to révest in himself title to the property transferred in trust or the income therefrom while a gift tax law is in effect. It specifically provides that if the power to revest title to property transferred in trust in the grantor is relinquished, while a law is in effect imposing a tax upon, the transfer of property by gift, the subsection shall apply only if (1) gift tax was paid with respect to such transfer, or gift tax return was filed but no tax paid because of deductions and exclusions claimed, and (2) the grantor consents in accordance with regulations to treat such transfer or relinquishment as having been a transfer subject to tax under the gift tax statute. It provides that the relinquishment by the grantor on or after June 7, 1932, and prior to January 1,1940, of power or control with respect to the distribution of trust property or the income therefrom “shall not be deemed a transfer of property for the purpose of this title.” It does not so provide as to the relinquishment of the power to revest title to such property in the grantor. Nor does it so provide as to the relinquishment of economic interests or control retained by the grantor. Such relinquishments are transfers of property taxable under the gift tax statute. The remaining question, whether the Commissioner erred in allowing five statutory exclusions of $5,000 each, is dependent upon whether the 1936 gifts were gifts of “future interest” within the meaning of section 504 (b) of the Revenue Act of 1932 and as defined in article 11 of Regulations 79 (1936 Ed.). The senior and junior trusts were to terminate upon the death of the donor, at which time the property thereof was to be distributed to designated beneficiaries, if living. The senior and junior trusts provided that during the lifetime of the donor the trustees could, in their sole discretion, pay to any beneficiary only part of his or her income, the balance to be accumulated for future distribution, but the amount to be paid and the time of payment of such accumulated income were to be determined by the trustees. Obviously, none of the primary beneficiaries had the right to the present and immediate use, possession, or enjoyment of the corpus or income of the trusts. Hence, the gifts to them in trust as to corpus and income were gifts of future interests, and petitioner is not entitled to the five statutory exclusions of $5,000 each erroneously allowed by the respondent in determining the’deficiency in gift taxes for 1936. Fondren v. Commissioner, 324 U. S. 18; Commissioner v. Disston, 325 U. S. 442; Alma M. Myer, 2 T. C. 291, 294; affirmed per curiam (C. C. A., 8th Cir.), 149 Fed. (2d) 642; Andrew Geller, 9 T. C. 484. Decision will he entered under Rule 50. SEC. 502. CERTAIN DISCRETIONARY TRUSTS IN CONNECTION WITH GIFT TAX. [[Image here]] (b) Amendment of Revende Act of 1932. — Section 501 of the Revenue Act of 1932 (imposing a gift tax) is amended by inserting at the end thereof the following: “(c) Certain Discretionary Trusts. — In the case of property in a trust created prior to January 1, 1939, if on and after January 1, 1939, no power to revest title to such property in the grantor could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom, then a relinquishment by the grantor on or after June 7, 1932 and prior to January 1, 1940, of power or control with respect to the distribution of such property or the income therefrom by an exercise or other termination of such power or control shall not be deemed a transfer of property for the purposes of this title. If such property was transferred in trust, the grantor not retaining such power to revest title thereto in himself, or if such power to revest title to such property in the grantor was relinquished, while a law was in effect imposing a tax upon the transfer of property by gift, this subsection shall apply only if (1) gift tax was paid with respect to such transfer or relinquishment, and not credited or refunded, or a gift tax return was made within the time prescribed on account of such transfer or relinquishment but no gift tax was paid with respect to such transfer or relinquishment because of the deductions and exclusions claimed on such return, and (2) the grantor consents, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, for all purposes of this title to treat such transfer or relinquishment in the calendar year in which effected, and for all periods thereafter, as having been a transfer of property subject to tax under this title. This subsection shall not apply to any payment or other disposition of income occurring prior to the termination of power or control with respect to the future disposition of income from the trust property.”