MABEL F. GRASSELLI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7391. Promulgated June 28, 1946.

*Mark A. Loofbourrow, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The Commissioner determined deficiencies in gift tax for the years and in amounts as follows:

| | | | |
|---|---|---|---|
| 1936 | $925.14 | 1939 | $3,298.12 |
| 1937 | 2,246.54 | 1940 | 4,121.61 |
| 1938 | 852.22 | 1941 | 218,887.55 |

Two questions are presented: (a) Whether, prior to July 30, 1941 (and after January 1, 1936), the petitioner was subject to gift tax upon amounts paid to beneficiaries, other than herself, by the trustee under a trust under which she had power of appointment; and (b) whether she is subject to gift tax because of action taken by her under such power, on July 30, 1941. All facts were stipulated and we adopt the stipulation by reference and find the facts therein set forth. Only such parts thereof as considered pertinent to examination of the issues will be set forth herein. As the petitioner takes no issue with the

amounts of the deficiencies or the values used by the respondent, and no evidence is offered to deny their accuracy, though the respondent specifically relies thereon, we consider that there is no issue as to figures, but only as to the law applicable thereto.

The material facts may be very briefly stated: In 1932 petitioner's husband created a trust, irrevocable by him, and of which the petitioner was not trustee, providing for payment by the trustee of the trust income during the joint lives of himself and petitioner, as follows: 50 per cent to petitioner, 30 per cent to his son, and 20 per cent to his daughter; and, after settlor's death, 50 per cent to petitioner and 25 per cent each to the daughter and son. In addition, the trust instrument provided as follows:

The Settlor's said wife shall have the right, at any time and from time to time, during her life, by an instrument in writing delivered to the Trustee to alter, amend or terminate the Trust Agreement in whole or in part, and in the event of any such termination the Trustee shall transfer, pay over and distribute such part or the whole of said principal, as the case may be, to the Settlor's said wife or to such person or persons, except the Settlor, and in such proportions as the Settlor's said wife shall direct by such instrument in writing, provided that the agreement shall not be amended so as to direct the payment, at any time, of income or principal to the Settlor.

The settlor, and after his death the petitioner, could give directions to the trustee, in writing, duly delivered. In excess of certain specific annuities provided by the trust instrument, the trust income, from January 1, 1936, to July 30, 1941, was paid one-half to petitioner and 25 per cent each to the daughter and son.

The petitioner, from 1932 to 1941, inclusive, pursuant to the power vested in her, modified the trust and withdrew substantial amounts from the trust fund.

By an instrument executed July 30, 1941, the petitioner, pursuant to the power vested in her, provided that the trust fund should be divided into three funds, designated "A," "B," and "C," that the income of funds A and B should be paid to the two children respectively, and that the income from fund C to be paid to petitioner for life, thereafter to be added (except as to certain bequests) to funds A and B; also that such trust principal as necessary for her care, comfort, and support, in accordance with her customary living standards, be paid to her from fund C.

The instrument also provided:

MABEL F. GRASSELLI shall have the right, at any time and from time to time during her life, by an instrument in writing delivered to the Trustee, to change the beneficiaries of Trust Fund C, except that she shall not in any way increase her beneficial interest in said Trust Fund nor confer upon herself any power not herein reserved to her, or otherwise amend the provisions of this agreement as to Trust Fund C. Said MABEL F. GRASSELLI shall have no power in any way to

alter, change or amend the provisions of this agreement with respect to Trust Funds A and B.

On March 3, 1942, petitioner by written instrument made a change in beneficiaries of fund C.

The deficiencies determined represent gift tax, first, upon the trust income paid from January 1, 1936, to July 30, 1941, to persons other than the petitioner; and, second, upon the trust assets placed in funds A and B, and remainder value of those placed in fund C (after subtraction of certain gifts and the value of petitioner's life estate). The deficiency notice based taxation as to the years 1936 to 1940, inclusive, upon petitioner's control over the income and its apportionment, stating that this made the recipients subject to petitioner's bounty, so that the amounts paid constituted gifts taxable to her under section 501 of the Revenue Act of 1932 and section 1000 of the Internal Revenue Code. With reference to the year 1941, the deficiency notice based gift tax upon certain distributions of trust income in 1941 to the son and daughter, and upon the value of trust property placed in funds A and B, and in C (less certain gifts and petitioner's life estate therein) by the instrument of July 30, 1941, upon the ground that therein the petitioner provided that thereafter she should have no power to alter, change, or amend as to A and B, and, since under the trust instrument she had full power to revoke, terminate or amend, therefore was vested with complete enjoyment, control, and disposition of the property and her exercise of such right constituted taxable gifts, within the meaning of section 1000 of the Internal Revenue Code.

After claim by the Commissioner against the petitioner for income tax upon all of the trust income from 1936 to 1940, both inclusive, the matter was settled by the payment by petitioner of all of such income tax, except amounts thereof paid by the trustee and two beneficiaries.

Under the facts outlined above, the petitioner's argument is, in brief, that the gift tax was laid on transfer of *property*, that a power is not property, and that under *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, there is no completed gift so long as the power is in existence, as was the case here, before and after the instrument of July 30, 1941, petitioner having therein expressly reserved rights given her by the trust instrument, which rights she exercised on March 3, 1942; also that the income paid to the children prior to July 30, 1941, came to them under the terms of the trust. Reliance is placed also upon *Edith Evelyn Clark*, 47 B. T. A. 865, to the effect that relinquishment of a power by a donee thereof entailed no gift tax, no "property" being transferred. The petitioner also argues that the amendments to gift tax law by section 452 of the Revenue Act of 1942 can not be retroactively applied to the taxable years here involved, though it is

admitted that, if they are so retroactive, petitioner is subject to gift tax.

The respondent, however, takes the view, in substance, that the broad powers conferred upon the petitioner were *exercised* by her on July 30, 1941, and, therefore, taxation resulted; that these were transfers of property not falling within the exclusions applicable to powers outlined in section 452 of the Revenue Act of 1942—in short, that the amendments are retroactive; that section 452 (a) provides that exercise or release of a power of appointment shall be deemed a transfer of property, and a power of appointment is described there as any power to appoint "exercisable by an individual"; and that "exercise" as contrasted with "release" of powers of appointment (before July 1, 1946) is not exempted by statute from taxation. It is pointed out that the *Edith Evelyn Clark* case was one of *relinquishment*, not exercise, of the power. It is likewise argued that the petitioner's complete power of revocation and appointment is tantamount to complete ownership, casting gift tax on petitioner when by payment of income to the beneficiaries prior to July 1941, and by the action taken on July 30, 1941, such dominion was relinquished; and that by paying income tax on the trust income for 1936 to 1940 petitioner so admitted. It is also stated that relinquishment by the donor completes the gift, under the *Sanford* case, and *Burnet* v. *Guggenheim*, 288 U. S. 280, as did the petitioner on July 30, 1941, by creation of funds A, B, and C. As to funds A and B, it is contended, she made completed irrevocable transfer, while, as to fund C, it was complete, except as to her life estate (and certain contingent gifts).

Since petitioner, as above seen, specifically admits the propriety of the Commissioner's action, if the provisions of section 452 of the Revenue Act of 1942 can be retroactively applied, we should first decide that question. Section 452 (a) amended section 1000 of the Internal Revenue Code by adding a new subsection, (c), which provides:

POWERS OF APPOINTMENT.—An exercise or release of a power of appointment shall be deemed a transfer of property by the individual possessing such power. * * *

The respondent admits this subsection to be effective only as of January 1, 1943, except as provided by section 452 (b) of the same act, but in effect says such section applies the above language of section 452 (a) whenever the power is exercisable in favor of a donee, as here. Section 452 (b) provides:

(b) POWERS WITH RESPECT TO WHICH AMENDMENTS NOT APPLICABLE.—

(1) The amendments made by this section shall not apply with respect to a power to appoint, created on or before the date of enactment of this Act, which is other than a power exercisable in favor of the donee of the power, his estate,

his creditors, or the creditors of his estate, unless such power is exercised after the date of enactment of this Act.

(2) The amendments made by this section shall not become applicable with respect to a power to appoint created on or before the date of enactment of this Act, which is exercisable in favor of the donee of the power, his estate, his creditors, or the creditors of his estate, if at such date the donee of such power is under a legal disability to release such power, until six months after the termination of such legal disability. For the purposes of the preceding sentence, an individual in the military or naval forces of the United States shall, until the termination of the present war, be considered under a legal disability to release a power to appoint.

Regulations 108, section 86.2 (b), on this subject, reads:

*Transfers under power of appointment.*—The exercise of a power of appointment after June 6, 1932, and before January 1, 1943, constitutes a gift by the individual possessing the power if the power is exercisable in favor of any person or persons in the discretion of such individual, or, however limited as to the persons or objects in whose favor the appointment may be made, if it is exercisable in favor of the individual possessing the power, his estate, his creditors, or the creditors of his estate. The release before July 1, 1946, of a power to appoint created on or before October 21, 1942, the date of enactment of the Revenue Act of 1942, is excepted from the application of the tax by reason of the express provisions of section 452 (c) of the Revenue Act of 1942, as amended by Public Law 95 (79th Congress), approved June 29, 1945. * * *

Section 452 (c) referred to in Regulations 108, section 86.2 (b), above (as amended by the Joint Resolution of December 17, 1942, by section 10 of the Current Tax Payment Act of 1943, by section 505 of the Revenue Act of 1943, by Public Law 511, 78th Congress, approved December 20, 1944, and by the Joint Resolution of June 29, 1945), provides:

(c) RELEASE BEFORE JULY 1, 1946.—

(1) A release of a power to appoint before July 1, 1946, shall not be deemed a transfer of property by the individual possessing such power.

(2) This subsection shall apply to all calendar years prior to 1946 and to that part of the calendar year 1946 prior to July 1, 1946.

In our opinion, the amendments enacted by section 452 are not effective retroactively. See *Henry F. du Pont*, 2 T. C. 246, where we pointed out that "The evident purpose [of section 452 of the Revenue Act of 1942] was merely to add to the category of taxable gifts the exercise or release of a power of appointment received by the holder of the power from another." Section 451 of the Revenue Act of 1942 (in the same "Part" as section 452) provides:

SEC. 452. GIFTS TO WHICH AMENDMENTS APPLICABLE.

Except as otherwise expressly provided, the amendments made by this Part shall be applicable only with respect to gifts made in the calendar year 1943, and succeeding calendar years.

We can find nothing in section 452 "expressly" providing that the amendments there added are applicable to an exercise or release of a power of appointment executed in 1941.

It is clear, we think, that nowhere in section 452 (b) (1) and (2) is there any express provision that *exercise* of a power of appointment prior to January 1, 1943, is, as respondent contends, subject to the amendments, and without an express provision to that effect, the exercise of power by the petitioner on July 30, 1941, may not be subjected to the language of section 452 (a) that "An exercise or release of a power of appointment shall be deemed a transfer of property by the individual possessing such power."

If the language of Regulations 108, section 86.2 (b) is intended to provide for gift taxation on exercises of powers prior to 1943, under the amendments provided in section 452, we think it is not within that statute and that it is invalid as applied here.

Subsection (b) (1) of section 452 does not affirmatively state that the amendments shall apply to any exercise, prior to the amendments, if, as here, the power is exercisable by the donee in his own favor. It merely requires, with respect to a power other than one so exercisable, that there be exercise *thereafter* for the amendments to apply.

Though the respondent invokes section 1000 (e), Internal Revenue Code (as added by section 502 (a), Revenue Act of 1943), and the language of the Senate Committee report thereon, we find nothing in either to support his theory. Not only do the text of the act and the committee report cover only cases of powers exercisable by the *grantor*, with no language as to donee of power, but the closing lines of the committee report specifically state: "This section does not affect the present law governing the taxability of powers of appointment received from another person."

Since we consider the 1942 amendments inapplicable, it only remains to inquire whether prior thereto the exercise of the power of appointment caused gift taxation. But exercise of a power, even by the donor himself, does not, prior to relinquishment thereof, cause incidence of gift tax. *Sanford's Estate* v. *Commissioner, supra.* We can not conceive why such exercise by a donee of such a power would be of greater effect. In *Edith Evelyn Clark, supra,* we held that there was no taxable transfer of property in 1932 upon the relinquishment of such a power, even though the relinquishment there was effected by an amendment of the deed of trust, under the power to amend therein contained, and thus an *exercise* of the power.

So far as funds A and B are concerned, the petitioner on July 30, 1941, in fact relinquished or released, rather than exercised, her powers, which she could do, under the amendatory legislation, section 452 (c) (1), as amended by H. J. Res. 353, approved May 29, 1946, until July 1, 1947, without incurring gift tax. The respondent, on

brief, states that, "With respect to Trust funds A and B, the petitioner unquestionably made a completed irrevocable transfer," and urges that "a gift is complete when the donor relinquishes dominion and control over the subject matter of a gift, as did the petitioner in the instant case on July 30, 1941, by creation of Trust funds A, B and C," and he computes the amount of gift by value of all, less petitioner's life estate (and certain contingent gifts not here involved), thus seeming to recognize *release pro tanto* of petitioner's powers. We hold that the petitioner did not incur gift taxation by the instrument of July 30, 1941.

This leaves for consideration only the question whether the petitioner is liable for gift tax on the income paid to others prior to July 30, 1941. To hold that the payment of such income causes incidence of gift tax on the donee would be inconsistent with our view in *Edith Evelyn Clark, supra.* There the power was held by a donee, and she exercised it by amending the deed of trust to strike out the paragraph giving her power to revoke, terminate, or amend. The trust instrument otherwise provided for income to her for life, thereafter corpus and income equally to three children, or their issue. The Commissioner determined that she had been "vested with complete control and disposition of the property and your relinquishing such right on June 22, 1932, constituted a gift * * *." We pointed out that the effect was the same whether there was appointment to the successor beneficiaries, or relinquishment of power to appoint; also that the beneficiaries could, despite exercise of the power by appointing them, take under the original trust; and we held that the relinquishment was not a taxable transfer. The same is true here, that is, the beneficiaries who received the income distributed would get it as effectively without appointment as with it, and by virtue of the trust instrument. The petitioner did nothing except to refrain from exercising her power to take or dispose other than to the beneficiaries who received the income. This is in the nature of relinquishment and within the ambit of the *Edith Evelyn Clark* case. If thereunder, where power over the trust was essentially the same as here, written relinquishment does not constitute a gift, inaction by the present petitioner, permitting the trust instrument to be followed as made, seems to be even less of the nature of gift. Cf. *Camelia I. H. Cerf*, 1 T. C. 1087. Respondent refers to a committee report on section 502 of the Revenue Act of 1943, adding section 501 (c) of the 1932 Act, but therein we find reference only to payments of income where the *grantor* of the trust retains power over future income, the emphasized language in fact being "the interim payment of income to any beneficiary or *other* surrender *by the grantor* of control over such income prior to such termination is nevertheless a taxable gift and to be treated accord-

ingly." Regulations 108, section 86.3, also relied on by the respondent, clearly is intended to apply, as does the example given therein, to cases of rights reserved by the donor of the trust, nothing indicating applicability to a case of donated powers of appointment. It should not be applied here. Nor is the fact that the petitioner settled a contention with the Commissioner as to whether she was owner of the trust income, by paying what tax the trustee and others had not paid, to be considered here. Such compromise does not necessarily demonstrate accuracy of view nor govern here. *Commissioner* v. *Warner*, 127 Fed. (2d) 913, and *Leonard A. Yerkes*, 47 B. T. A. 431, cited by the respondent, involved powers reserved by the grantor. *Richardson* v. *Commissioner*, 151 Fed. (2d) 102, also cited by the respondent, involved the donee of a power to appoint, as here, but the donee, who was also the trustee of the trusts which he had power to cancel for his own benefit, did not merely permit income to be paid or accumulated for others, but himself received the income as trustee, and within his discretion, as provided in the trust instrument, either set it aside as accumulations for the beneficiaries or paid it to them, whereby as the Circuit Court, affirming the Tax Court, held, he made completed gifts. Here the petitioner was not trustee, and took no such affirmative action as did the petitioner in the *Richardson* case. She did nothing, and the payment of income to the beneficiaries was not her act, but that of the trustee. She could, under the terms of the trust, accomplish nothing by inaction for she could direct the trustee and alter, amend, or terminate the trust only by an instrument in writing delivered to the trustee. Under these facts we think the *Richardson* case does not apply. Here, as in *Camelia I. H. Cerf, supra*, we said of the *Edith Evelyn Clark* case, the petitioner merely had a power of defeasance over the interests of the other beneficiaries, which interests were already contingently theirs, under the trust instrument. Relinquishment merely removed the power of defeasance. Unlike the *Cerf* case, where the petitioner was sole income beneficiary and we held she had a vested equitable interest, here, as in the *Clark* case, the petitioner (aside from her own 50 per cent interest in the income trust here involved) had nothing except a power to defeat the interests contingently belonging to the others, the children. Failure to exercise that power did not in our opinion effect a gift. If the petitioner in the *Clark* case could not effect gift by relinquishment, the petitioner here could not do so by doing nothing but let the trust provisions take their course and the income take its course to other beneficiaries. We conclude that petitioner did not make gifts of the income paid to the other beneficiaries prior to July 30, 1941.

*Decision of no deficiency will be entered.*