FLORENCE E. WALSTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4058. Promulgated January 21, 1947.

*Orwill V. W. Hawkins, Esq.,* for the petitioner.
*Clay C. Holmes, Esq.,* for the respondent.

OPINION.

HARLAN, *Judge*: Petitioner contends that she did not make a gift in any of the taxable years. She urges that, in determining the operation and effect of the transfers and whether they resulted in transfers by gift or by inheritance, the law of New York must be applied; that the outstanding estates at the time of the execution of the 1920 deed were a vested life estate in her and a vested remainder in her children and Amy; that these estates were subject to powers given her which when exercised divested them; that these powers authorized her to appoint any person of the testator's blood to receive the income and to parcel out the capital to any person of the testator's blood, except herself; that in 1932, when the gift tax law went into effect, her life estate had terminated by the 1920 appointment of Lewis to receive the income; that the 1938 deed appointed Lewis to receive one-half of the capital and continued in him the life estate he was already enjoying

and extended it to cover its increased duration, i. e., Lewis' life; that the property she appointed in both deeds was the capital of share C and nothing else; that she dealt with this property only by the exercise of powers; that the property which passed by the exercise of these powers was not her property; that she acted merely by the authority of her father to pass his property as an inheritance from him to Lewis; and that the powers of revocation contained in the 1920 deed did not prevent the estate appointed by her from vesting and the relinquishment of that power in 1938 did not operate as a transfer of property by gift.

The respondent contends that the payments to Lewis of the income of share C for the years 1932 to 1938 were periodic gifts of such income by petitioner to Lewis. He also contends that the irrevocable appointment to Lewis of one-half of the corpus of the trust and the income of the remaining one-half, made in 1938, constituted a gift by petitioner of her right to the income of share C for her life. The respondent does not claim that petitioner is liable for any gift tax as a result of the transfer of one-half of the corpus of share C to Lewis in 1938.

The position of the respondent apparently is that the petitioner was given, under her father's will, the right to receive the income of share C for life, which she could keep or alienate as she saw fit; that, until she made an irrevocable and completed gift of that property right, the income of share C was hers; that it did not cease to be hers by reason of the revocable transfer of the right to receive it to Lewis in 1920; that when Lewis received the income of share C during the years 1932 to 1938, he was receiving her income and a taxable gift from her to him resulted from the payment of the income to him in each year; and that, in 1938, she irrevocably appointed to Lewis the right to receive the income from share C, and made a taxable gift measured by the value of this property right.

An instrument creating a power, like all other instruments, must receive a reasonable construction, and the intention of the party executing the instrument is to be ascertained from the language used, the situation of the parties, and all surrounding circumstances. *Towler* v. *Towler*, 142 N. Y. 371; 36 N. E. 869. At the time the decedent executed his last will in 1907, he had three children, petitioner, Amy, and Lewis. In his will he divided his residuary estate into three shares. Share A was given to petitioner and her issue, and share B to Amy and her issue. Had it not been for strained relations existing between the decedent and Lewis, resulting from the latter's marriage to a divorced woman sixteen years his senior, share C would undoubtedly have been given to Lewis outright. Because of this marriage, which did not meet with the decedent's approval, he decided not to make an immediate bequest of share C to Lewis in his will,

although he did bequeath to him the income of a $125,000 trust. At or about the time he made his will, he told petitioner that he intended that share C should go to Lewis; that he wanted her to decide when and how Lewis should inherit this share of his estate; that he had invested her with powers to appoint the income and principal of share C because she knew his wishes with respect to this share and he knew he could trust her to act in the right way; and that while he had given her powers to distribute it among persons of his blood, he wanted her to turn it over to Lewis when, in her discretion, she thought it right he should have it. Petitioner testified that she did not at any time consider the income and principal of share C as her property; that she regarded it as part of her father's estate of which she was guardian under the terms of her father's will and of which Lewis in her discretion might be the principal beneficiary; that in making the appointments she intended to dispose of her father's property; and that she exercised the appointments in favor of Lewis because in so doing she carried out the wishes her father expressed to her and in the manner, to the best of her belief, he would have done himself had he been alive and seen how well her brother had done in his career and how successful his marriage had proved to be.

With this summation of the evidence in mind, we shall consider the provisions of the decedent's will with respect to share C. The life interest of decedent's widow in one-half of the income of this share may be ignored, inasmuch as she died in 1910, before any of the transfers here involved were consummated. Eliminating the provision for his widow, the decedent gave petitioner the net income of share C during her natural life, and provided that on her death the capital fund should go to such person or persons as she should by her will appoint. He then authorized and empowered her, *anything herein to the contrary notwithstanding*, by deed or other act taking effect in her lifetime, to appoint any person or persons of his blood she should think fit to receive the whole or any part of the income of this share during her life and "to the extent that she lawfully may during the life of my son Lewis, or for any shorter time, and such appointment or appointments to revoke and other or different appointments thereafter from time to time to make and to revoke." He further authorized and empowered her by deed or other act taking effect in her lifetime to appoint the capital of this share to any person or persons of his blood she should think fit to receive it.

Why did the decedent give petitioner the power to appoint the income of share C to a person or persons of his blood during her lifetime? Obviously, if it was his intention that she should have an absolute life interest in the income of share C the provision giving her this power would have been mere surplusage. The only logical answer

is that he wanted his three children to eventually receive an equal share of his residuary estate and he wanted to place Florence in a position to pass on the inheritance he intended for Lewis, share C, when the time was propitious. Without this power, petitioner, under the law of New York, could not have alienated or appointed any part of the income of share C to anyone. New York Personal Property Law, sec. 15. A "power of appointment" is defined as a power of disposition given a person over property not his own. *Thompson* v. *Pugh*, (Mass.), 102 N. E. 122; *In re Howard's Estate* (Ohio), 29 N. E. (2d) 575. Apparently the testator was aware of this definition, and that the giving of the power of appointment over the income of share C to Florence was inconsistent with the life interest in the income previously given her, and that is why he used the words "anything herein to the contrary notwithstanding" in conferring upon her the power. These words clearly indicate that he intended the power of appointment to prevail over the life interest in Florence. "A life estate is terminated by the event of any contingency named in the instrument creating the estate as a limitation for its continuance." 31 C. J. S. 79. As we construe the provisions of the decedent's will with respect to share C, in the light of the surrounding circumstances, Florence received a temporary interest in the income of share C which might last for life, but was subject to be terminated if and when the power of appointment was exercised. The power of appointment was given over the interest in the income of share C which commenced when her interest terminated. This construction harmonizes the two inconsistent provisions so as to give effect to each in accordance with the testator's intention.

In 1920 petitioner appointed Lewis to receive all of the income from share C as long as he might live during her lifetime, but limited to their joint lives "unless sooner modified or revoked"; and, in 1938, she appointed him to receive one-half of the capital of share C and the income from the other half during his life, whether or not he should survive her. If petitioner had a life interest in the income, and was making a gift of all or a part of it, as respondent urges, she would be giving away something she did not have when she appointed to Lewis income from share C "during his life whether or not he should survive her." She was able to appoint Lewis to receive an interest in the income of share C extending beyond her life because the decedent empowered her to make such an appointment and, in exercising the power, she was executing the decedent's intention as to the disposition of his property, and not hers.

"Every case of a power given in a will, is considered by a court of chancery as a trust for the benefit of the person for whose use the power is made, and as a devise or bequest to that person." *Hunt* v.

*Rousmanier*, 21 U. S. (8 Wheat.) 173, 205. "The property to be appointed does not belong to the donee of the power, but to the estate of the donor of the power. By the creation of the power, the donor enables the donee to act for him in the disposition of his property. The appointee designated by the donee of the power in the exercise of the authority conferred upon him does not take as legatee or beneficiary of the person exercising the power but as the recipient of a benefaction of the person creating the power. It is from the donor and not from the donee of the power that the property goes to the one who takes it." *Hogarth-Swan* v. *Weed*, 274 Mass. 125, 129. To the same effect, see *Matter of Harbeck*, 161 N. Y. 211, 218; *In re New York Life Ins. & Trust Co.*, 139 N. Y. S. 695, 705; affd., 209 N. Y. 585, 586; *Matter of Stewart*, 131 N. Y. 274, 281; 4 Kent's Comm. 338.

In section 452 of the Revenue Act of 1942 Congress amended section 1000 of the Internal Revenue Code to provide that "An exercise or release of a power of appointment shall be deemed a transfer of property by the individual possessing such power." This amendment became effective as of January 1, 1943, and does not apply to the taxable years here involved. The applicable provision of the law, section 501 of the Revenue Act of 1932, provides for the imposition of a gift tax upon transfers of property by gift. One of the essentials of a valid gift is a clear and unmistakable intention on the part of the transferor to make a gift of his or her property (38 C. J. 370). Delivery of property without such intent will not support a gift (38 C. J. 792). Petitioner made no gratuitous transfer of her property. By the exercise of the power of appointment in 1920 and 1938, she passed to Lewis "a benefaction of the person creating the power," her father.

Did the petitioner's retention of the right to revoke the 1920 appointment of a life interest in the income of share C to Lewis render her liable for gift tax on the amount of the income of share C received by Lewis in the year 1932 to August 24, 1938? Respondent urges that it did, and on brief says that "it is obvious that had petitioner failed to execute the 1920 instrument, the income of Share C in excess of $1,666.66 a month would have been paid to her, during her life, by the trustees of Share C." He also states that "during the years 1932 to 1937, inclusive, and the period January 1, to August 24, 1938, petitioner gave away what she possessed, a life interest in the income of Share C." Cf. *Cerf* v. *Commissioner*, 141 Fed. (2d) 564. Respondent fails to recognize that the decedent, in giving petitioner a power of appointment over the income of share C, thereby indicated that its exercise was to limit her interest in the income to less than a life interest. Thus, when she exercised the 1920 appointment to Lewis her interest in the income was terminated, and Lewis acquired a vested life interest in the income, not from her, because she had nothing to give, but from the decedent, the donor of the power, the exercise of which

passed the interest to Lewis. Petitioner having made no gift, we do not have an instance of an incomplete or imperfect gift resulting from the retention of a power of modification or revocation in the donor which would justify taxing income to her until the power was relinquished. Cf. *Burnet* v. *Guggenheim*, 288 U. S. 280; *Estate of Sanford* v. *Commissioner*, 308 U. S. 39. The 1920 exercise of the power of appointment was not a nullity. As a result of it, Lewis became the owner of an equitable interest in the corpus, and entitled to the income of share C during his lifetime and for a period not in excess of the joint lives of himself and petitioner, subject, however, to the power she retained pursuant to the provisions of the decedent's will "to revoke *and other and different appointments* thereafter from time to time to make and revoke." (Italics supplied.) *Blair* v. *Commissioner*, 300 U. S. 5; *Commissioner* v. *Field*, 42 Fed. (2d) 820, 822; *Jones* v. *Clifton*, 101 U. S. 225. Thereafter, it was the duty of the trustees to distribute the income of share C to Lewis. They did so, and he paid the income tax thereon. The power of revocation was not held by petitioner for her benefit, but merely as trustee to carry out the will of the decedent. The imposition of gift taxes against her on the theory that during the years 1932 to August 24, 1938, inclusive, *her* interest in the income of share C had not been fully terminated would not be justified in view of the provision of the decedent's will that any exercise of the power to revoke merely empowered her to make "other and different appointments." As shown in our findings, the Supreme Court of New York, New York County, held that the petitioner was not herself intended to be included in the class from among whom the appointees were to be taken.

In 1938 petitioner exercised her power "to revoke and other and different appointments * * * to make." She revoked her 1920 appointment to Lewis and appointed him to receive one-half of the capital of share C, and the whole of the net income of the other half of share C during his life, whether or not he should survive her. The respondent, while conceding that the appointment of one-half of the capital did not result in a taxable gift, nevertheless urges that by reason of the 1938 deed she is liable for a gift tax upon the value in that year of an interest in the entire fund for her life, diminished by the value of her irrevocable transfer to Lewis in 1912 of $20,000 a year during their joint lives. Respondent overlooks the fact that by reason of the 1938 appointment of one-half of the capital of share C to Lewis any lesser estate dependent upon this one-half of the capital, such as an interest in the income, fell. No one holding such an interest had the slightest claim against him or the property he received and no release of any power of revocation was required to make his title good. When petitioner appointed one-half of the capital to Lewis and

directed the trustees under her father's will to transfer and pay it over to Lewis, the latter received no interest in the income as such. His prior interest in the income of this one-half was extinguished and no gift of income resulted from this extinguishment.

There remains for consideration the tax consequences, if any, of petitioner's revocation in 1938 of the 1920 appointment to Lewis of the income of the other one-half of share C, and the irrevocable appointment to him of the net income from this one-half of the share during his life, whether or not he should survive her. The net effect of these two acts was to extend the interest of Lewis in the income appointed to the period his life might exceed that of petitioner and to render this interest secure from any subsequent exercise by petitioner of the power to modify or revoke granted her in decedent's will. Cf. *Edith E. Clark*, 47 B. T. A. 865. It is important to bear in mind, however, that the only way Lewis acquired an interest in the income of share C was through the exercise by petitioner of the power of appointment given her in decedent's will. Such a transfer was not brought within the category of taxable gifts until section 1000 of the Internal Revenue Code was amended by section 452 of the Revenue Act of 1942. It was not subject to gift tax under section 501 of the Revenue Act of 1932, applicable here, and we so hold. Cf. *Mabel F. Grasselli*, 7 T. C. 255.

Our conclusion from the foregoing is that the petitioner did not during the taxable years make any transfer of her property by gift and is not liable for gift tax. This conclusion renders it unnecessary to discuss or consider other questions raised relating to the value of the property transferred and liability for penalties for failure to file gift tax returns.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

KERN, *J.*, concurs only in the result.

———

DISNEY, *J.*, dissenting: The difficulty with the majority view, in my opinion, is that it is essentially based on the erroneous idea that the petitioner had by the testator been given a power of appointment over the life interest in income which she was given. The nature of a power is that action thereunder is taken for and on behalf of the donor of the power, the action being his and not that of donee of the power. Here the petitioner had been given, outright, the net income of share C during her natural life (together with a true power, that of disposing of the capital fund by will). This placed an equitable estate in the income in her—unless as the majority opinion holds, a power in her over such life income was set up by the further words, "I

authorize and empower her * * * to not only to retain to her own use, but also to appoint any person or persons being of my blood she shall think fit to receive the whole or any part of the income of this share during her life (and to the extent that she lawfully may during the life of my son Lewis, or for any shorter time * * *.") I have placed in parenthesis the provision authorizing her to dispose of the income during the life of Lewis, for, to the extent that she was empowered to appoint the income during his life *after her own life,* I think a true power was conferred. But, in my view, neither logic nor law permits a power to be set up over the subject matter of an outright gift (the petitioner's life estate in income) merely because a testator adds altogether superfluous words authorizing and empowering disposition of the gift. The law as to powers is that of the domicile of the donor; 49 C. J. 1260; and his domicile appears to have been in New York. It has been held in that jurisdiction that "To cut down an absolute and restricted power of disposal given by will, precatory words must plainly and imperatively indicate the requisite testamentary intent so to do." *Keefe* v. *Keefe*, 236 N. Y. S. 176. There the will gave testator's property to his wife "for her sole use and benefit during her lifetime," but added "At or before my said wife's death, it is my wish that all that may remain of my estate * * * may be equally distributed by my said wife's Executor and given to" certain nephews; and it was *"held* to give wife a life estate, accompanied by an absolute power of disposition for her sole use and benefit." The court said:

A wish stated in a testament can of course father and mark the testamentary thought and intention, and thus convey the disposing will. But to have that effect it must survive over any repugnant rights and powers concurrently given. *Clay* v. *Wood*, 153 N. Y. 134, 47 N. E. 274; *Street* v. *Gordon*, 41 App. Div. 439, 58 N. Y. S. 860; *Matter of Barney's Will*, 207 App. Div. 25, 201 N. Y. S. 647. * * *

In the instant case it is plain that, as in the *Keefe* case, *supra*, there is outright gift, not to be restricted or cut down by later words even more plainly than in that case, indicating lack of requirements set by the testator.

Since the majority opinion here stresses the evidence as to the testator's desires, expressed *aliunde* the will, we note *In re Atkins' Will*, 137 N. Y. S. 88, holding:

1. On the probate of a will making an absolute gift but expressing testator's confidence that the estate will be distributed by the donee in accordance with a memorandum attached to the will, the memorandum, admitted in evidence over the objection, must be ignored.

2. Where an estate is given in one part of a will in clear and decisive terms, it cannot be taken away or cut down by subsequent words that are not as clear and decisive as the words giving the estate.

Since the majority opinion in the instant case expresses the view that petitioner held her power of revocation as trustee, we quote the *Atkins* case:

That the testator trusted his legatee, called him his "trustee," expressed his confidence that his undisclosed wishes would be respected, and implicitly believed that the estate would be appropriated as nearly as possible in accordance with a certain letter, all evince a personal reliance upon the beneficiary's fidelity and an assurance of his loyalty in the disposition of the estate; but none of these expressions alone constitutes a trust. To believe another to be trustworthy and to request him to justify such belief in respect to a conveyance or devise to him must fall far short of erecting a trust as the estate conveyed or devised, unless the estate is both given and taken upon the trust not only asserted but defined.

If a memorandum attached to a will, and expressing the desires of the testator, can not override or restrict an absolute gift, then I suggest that the words used by the testator and the oral expressions of desire in this matter are altogether insufficient to do so. Moreover, the orally expressed desires, in my view, negative rather than confirm any idea that petitioner's gift of life income was affected or restricted by any power. The whole evidence on the point indicates affirmatively that the testator wished to have the matter entirely within the control and discretion of his daughter, with no rights whatever enforceable by the son. Therefore, when the petitioner in 1920 passed her life interest to the son, but revocably, and did not give up power to revoke until 1938, the income from 1932 and after was taxable to her. That it has above been noted that there was a power in her to appoint the income after her life during that of her brother is immaterial, for by the instrument in 1920 she appointed Lewis to receive the income "as long as he may live during my lifetime, but limited to our joint lives." Therefore she exercised no power as to a period after her death.

Since the majority opinion refers to *Mabel F. Grasselli*, 7 T. C. 255, I point out that therein the petitioner's own life interest (in one-half of the income) was not involved. It was paid to the petitioner and not the subject of the deficiency. The point as to income prior to her conveyance in 1941 was whether she was subject to gift tax on the other one-half of the income going to the other beneficiaries from whom by exercise of her power of appointment she might have taken it, but did not exercise her power. The other beneficiaries took the other income under the trust instrument, without any action by the petitioner. Clearly, the situation is not parallel to that here involved, where the majority opinion itself is on the theory that Lewis could take only by exercise of power by the petitioner.

For the same reason *Edith Evelyn Clark*, 47 B. T. A. 865, seems inapplicable here. The petitioner there not only held a power over

the rights of others, but the beneficiaries could take under the original instrument without any appointment.

The conclusions above expressed render it unnecessary to consider more particularly the action taken by the petitioner in 1938 as to income for her lifetime. She then gave up the right of revocation and completed the gift of the life income made in 1920, thus becoming subject to gift tax. *Burnet* v. *Guggenheim*, 288 U. S. 280; *Margaret White Marshall*, 43 B. T. A. 99. In so far as she at that time also appointed Lewis to receive income *after her lifetime* she was, under *Sanford* v. *Commissioner*, 308 U. S. 39, and the *Grasselli* case, *supra*, not subject to gift tax, since she merely exercised that limited power of appointment. It is immaterial whether she also exercised or relinquished, at the same time, a power of appointment over the capital fund. No deficiency in gift tax is based on disposition of that fund. I respectfully dissent.

TURNER, LEECH, TYSON, HARRON, and LEMIRE, *JJ.*, agree with this dissent.