INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AGRI-CULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) and its Local 588, Petitioners,

v.

UNITED STATES OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.

No. 76–1718.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1977.

Decided June 24, 1977.

608

Bertram Robert Cottine, Washington, D.C., Jerome Schur, Chicago, Ill., for petitioner.

Joseph A. O'Reilly, Dearborn, Mich., for intervenor.

Allen H. Sachsel, Atty., U.S. Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for respondent.

Before CUMMINGS, PELL and TONE, Circuit Judges.

PER CURIAM.

Pursuant to Section 11(a) of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 660(a)), the petitioner Union[1] sought to review an order of the Occupational Safety and Health Review Commission issued on May 25, 1976. The order directed Ford Motor Company, a party before the Commission and intervenor before this Court, to implement feasible administrative or engineering noise controls at its Chicago Heights, Illinois, metal-stamping plant within a two-year period.

On March 6, 1973, the Secretary of Labor issued a citation charging Ford with violating Section 5(a)(2) of the Act[2] and the pertinent regulation thereunder.[3] Ford was given 60 days to submit an abatement plan, but this date was extended until October 15, 1973.

On April 19, 1973, the Union filed a notice of contest with the Secretary asserting that the time period for submission of the abatement plan was unreasonably long. The matter was transferred to the Commission under Section 10(c) of the Act (29 U.S.C. § 659(c)). The Department of Labor filed its response on April 26, 1973, and the Union filed its answer on May 10, 1973. In its answer, the Union maintained that the amended citation "only fixed a date for submission of a plan for abatement which was unreasonably remote in time * *." Ford then elected party status the same day. By motion of June 4, 1973, the Department of Labor moved for an order which "further amends the amended Citation involved in the proceeding * * * by specifying (in addition to the date for submission of a plan of abatement already contained therein) the date of June 1, 1974 as the abatement date * * *, as required by 29 CFR 1910.95(b) * * *." By response dated June 13, 1973, Ford filed an objection claiming that the abatement period was too short. The motion to amend the citation was granted on June 22, 1973.

The Commission referred the contested matter to an Administrative Law Judge for evidentiary hearings which were held on

1. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local Union 588.

2. Section 5(a)(2) provides that each employer subject to the Act shall comply with occupational safety and health standards promulgated thereunder (29 U.S.C. § 654(a)(2)).

3. The regulation provides:

"When employees are subjected to sound [levels] exceeding those listed in Table G-16, feasible administrative or engineering controls shall be utilized. If such controls fail to reduce sound levels within the levels of Table G-16, personal protective equipment shall be provided and used to reduce sound levels within the levels of the table." (29 C.F.R. 1910.95(b)(1)).

February 13 and 25, 1974. On September 10, 1974, he issued a decision finding that the June 1, 1974, abatement period was unreasonably short "because the undisputed record places a minimum time limit of two years to accomplish abatement" (App. 30). He concluded that it was necessary to remand to the Secretary of Labor to fix a reasonable time for the abatement. The case then went to the Commission for review under Section 12(i) of the Act (29 U.S.C. § 661(i)).

On May 25, 1976, the Commission rendered its decision. Chairman Barnako and Commissioner Moran held that the Administrative Law Judge had correctly concluded that the June 1, 1974, time period for abatement was unreasonably short. However, they faulted him for not prescribing a reasonable abatement time himself on the basis of the evidence before him. After reviewing the evidence before the Administrative Law Judge, the majority concluded that Ford must implement "feasible administrative or engineering controls" to comply with the noise regulation (note 3 *supra*). Ford was given two years to accomplish this goal from the date the Commission's order became final. "Because the clear language of the statute limits employee contests to the reasonableness of the *period of time* which is fixed in the citation for abatement," the majority held the sufficiency of the abatement plan could not be directly contested by the Union. (Emphasis in original.) The Commission agreed that evidence could be adduced to show the employer's abatement plan does not include all presently available feasible abatement methods or controls since such specific methods and controls and their implementation time are determinative of reasonable abatement time. However, the Commission held that such evidence in this case demonstrated the abatement period to be unrea-

sonably brief. Dissenting Commissioner Cleary concluded that the Ford August 31 abatement plan, which had been submitted to the Administrative Law Judge on September 4, 1973, was inadequate, although the Secretary of Labor had approved it. This Commissioner also thought that the two-year period for compliance was too lengthy. We agree with the Commission's majority decision and therefore affirm.

■ Section 10(c) of the Act controls this case. It provides in pertinent part:

"If * * * within fifteen working days of the issuance of a citation under section 9(a), any employee or representative of employees files a notice with the Secretary [of Labor] alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing * * *. The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. * * *" (29 U.S.C. § 659(c)).

Under a plain reading of Section 10(c), the Commission may review only the reasonableness of the period of time fixed in the citation for the abatement of the violation. As noted, that time had been fixed as June 1, 1974, by the Secretary of Labor and had been held unreasonable by an Administrative Law Judge of the Commission[4] who did not specify another abatement date. Section 11 gives this Court jurisdiction to review "the question determined" by the Commission, and the Commission's findings of fact, if supported by substantial evidence, "shall be conclusive" (29 U.S.C. § 660).[5]

---

**4.** An Administrative Law Judge is empowered to make initial decisions in this area subject to review by the Commission. See Section 12(i) of the Act (29 U.S.C. § 661(i)). The Administrative Law Judge agreed with the Union that the burden of proving that his proposed abatement date was not unreasonable rested with

the Secretary (App. 26). The Commission evidently so agreed *sub silentio.*

**5.** Because the Act provides only for review by the courts of appeals and we are not reviewing a district court's disposition here, we do not pass on the Union's contention that the Admin-

■ The Union contends that Ford could not challenge the unattainability of the June 1, 1974, date before the Commission because it did not file a notice of contest with the Secretary of Labor under Section 10(b) of the Act (29 U.S.C. § 659(b)). However, on May 10, 1973, Ford requested the Commission to accord it party status and was thereafter treated as a party as permitted by the Commission's rules (29 C.F.R. 2200.20(b)). On June 18, 1973,[6] Ford filed a response objecting to the June 1, 1974, abatement date, and on September 4, 1973, filed an abatement plan. Since this abatement date originated in the Secretary of Labor's June 4, 1973, motion to amend its citation against Ford,[7] Ford's June 18 objections were timely because within the "fifteen working days" fixed for contesting a citation (29 U.S.C. § 659(a)). Indeed, the citation was not amended until June 22. Even if Ford had missed that deadline, it could file a petition for modification of the abatement date at any time (29 U.S.C. § 659(c)). Finally, even in the Union's contest of the length of the June 1, 1974, abatement date, the Commission's power to consider its reasonableness permitted it to shorten or lengthen the period for abatement. Cf. *California Stevedore & Ballast Co. v. OSHRC,* 517 F.2d 986, 988 (9th Cir. 1975); *Brennan v. OSHRC and Interstate Glass Co.,* 487 F.2d 438 (8th Cir. 1973).

The Union's principal argument is that the Commission should have considered the merits of Ford's abatement plan in this proceeding and made its own modifications in the plan. Dissenting Commissioner Cleary so held. However, the appended majority decision, which we adopt as our own, strikes the appropriate balance. As seen, Section 10(c) only permits the Commission to consider whether "the period of time fixed in the citation for the abatement of the violation is unreasonable." The Senate Report states in parallel terms that Section 10(c) gives an employee or union the right to challenge the Secretary's citation on the ground that the abatement date provided therein "is unreasonably long." 3 U.S. Code Cong. and Admin. News, 91st Cong. 2d Sess. p. 5191 (1970).

■ With such a statutory mandate, the Administrative Law Judge and the Commission majority decided they could consider questions respecting the means available to abate a violation in determining the reasonableness of the abatement period. Here the Commission considered Ford's August 31 plan and all the evidence before overturning the date fixed in the citation and issuing a new date. This was consonant with the statutory scheme which places the promulgation of standards with the Secretary of Labor and gives him investigatory and prosecutorial functions (29 U.S.C. §§ 655, 657, 658 and 659(a)) while only limited administrative adjudication is conferred upon the Commission (29 U.S.C. §§ 659 and 661). Brown, A Law Is Made— The Legislative Process in the Occupational Safety and Health Act of 1970, 25 CCH Labor L.J. 595 (1974). Moreover, the Act provides other administrative and judicial remedies (29 U.S.C. §§ 657(f), 660(c), 662(d) and 666(d)) by which endangered employees may force the Commission to seek relief. We need not decide whether the Commission could reject an abatement plan which contains no true abatement date at all, a question left open by the Statement of Po-

---

istrative Procedure Act (5 U.S.C. §§ 701–706) permits the district courts to review the Secretary of Labor's approval of abatement plans. In opposition to this contention, it might be urged that Congress referred to the Administrative Procedure Act in this Act when it saw fit (29 U.S.C. § 659(c)) and provided that the courts of appeals review standards promulgated by the Secretary (29 U.S.C. § 655(f)) and state plans (29 U.S.C. § 667(g)). See generally, *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192. The district courts are only empowered to grant injunctions and writs of mandamus in circumstances not relevant here (29 U.S.C. § 662) and to impose fines and imprisonment (29 U.S.C. § 666).

6. The response was dated June 13 but was received by the Commission on June 18 (Ford Br. 4; App. 19).

7. The motion was granted on June 22 (App. 12–13).

sition filed with us by the Secretary.[8] But when an abatement date is set, the Commission's interpretation of the statute is entitled to deference.[9] *Brennan v. OSHRC and Republic Creosoting Co.,* 501 F.2d 1196, 1199 (7th Cir. 1974); *Usery v. Godfrey Brake and Supply Service, Inc.,* 545 F.2d 52, 55 (8th Cir. 1976).

 The Commission's extension of the abatement date for two years from the date its order became enforceable, *viz.,* June 25, 1978,[10] was supported by substantial evidence. The Union's expert witness testified that noise abatement at this plant would take at least two years and that Ford's firm of acoustical consultants was one of the finest in the country. Other evidence summarized in the attached decision of the Commission also shows that the Commission's conclusion·was amply supported in the record. Since the Secretary submitted the abatement plan to the Administrative Law Judge (App. 20) without requiring Ford to disclose its consulting firm's underlying engineering survey, we do not think the Commission had to require Ford to submit it to the Commission (as the Union urges) with respect to the unreasonableness of the June 1, 1974, abatement time period. The Union has not shown why this survey was essential to the Commission's determination. While the Commission's decision does not contain findings of fact labeled as such, the body of its opinion, together with the findings of the Administrative Law Judge, contains enough factual findings to

support the selection of June 25, 1978, as a reasonable period for abating the noise level at this plant.

In the interim, the employees are not left exposed to excessive levels of noise. Ford's abatement plan requires them to wear protective equipment such as ear plugs and ear muffs until "feasible administrative or engineering controls" can be utilized, as provided in 29 C.F.R. 1910.95(b)(1), the applicable noise standard promulgated by the Secretary (note 3 *supra*).

The Commission's decision is affirmed.

### APPENDIX

---

### UNITED STATES OF AMERICA

### OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

OSAHRC Docket No. 2786

SECRETARY OF LABOR,

*Complainant,*

v.

LOCAL 588, UNITED AUTO WORKERS,

*Respondent,*

FORD MOTOR COMPANY,
METAL STAMPING DIVISION,

*Employer.*

---

8. The Union contends that the Commission should review the abatement plan to establish that abatement will actually take place within the shortest possible time. But if a shorter abatement time is feasible under a modified abatement plan, the Union could adduce this plan in support of its petition to set aside an abatement period as unreasonably long. So long as some abatement date is set, severe penalties are available against the employer if actual abatement is not achieved by that date. 29 U.S.C. § 666. And the severity of the penalty would depend on the employer's good faith in. constructing a plan which actually abates the violation, as well as its good faith in the plan's implementation. 29 U.S.C. § 666(i).

9. The Secretary of Labor has not chosen to participate as a party in this review proceeding.

Since the Secretary is authorized by Section 11(b) of the Act (29 U.S.C. § 660(b)) to petition the courts of appeals for review of Commission orders, we could assume the Secretary agrees with the Commission's interpretation of the Act. In any event, in his Statement of Position filed in this Court, the Secretary substantially agrees with the Commission's interpretation of the Act but takes no position as to the correctness of the result reached. When the Secretary and the Commission's interpretations are the same, the principle of administrative agency deference intensifies.

10. The Commission's decision was released on May 25, 1976, but was not final until thirty days thereafter (29 U.S.C. § 659(c)).

## DECISION

Before BARNAKO, Chairman; MORAN and CLEARY, Commissioners.

MORAN, Commissioner:

The litigation in this case was initiated by Local 588, United Auto Workers, which contested the propriety of the abatement period for item 81 of an 82-item citation which complainant issued to the Ford Motor Company's Metal Stamping Division. The union, which represents employees at the cited plant, also questioned the adequacy of an abatement plan submitted by the employer pursuant to the complainant's direction. Following two amendments by the complainant of the abatement date specified in the citation, the employer asserted party status and contended that the abatement period was unreasonably short.

On September 10, 1974, Review Commission Judge George W. Otto issued a decision in the case which is before us for review pursuant to 29 U.S.C. § 661(i). That decision, which is attached hereto as Appendix A,[1] correctly held that the time period for abatement specified on the amended citation was unreasonably short and that the Commission lacked authority to determine what specific abatement measures should be prescribed in the abatement plan. Additionally, the Judge ordered the complainant to establish a new abatement date. We find that the Judge erred in not himself prescribing a reasonable abatement time on the basis of the evidence before him.

Item 81 of the citation charged the employer with violating 29 U.S.C. § 654(a)(2) by failing to utilize feasible administrative or engineering controls to protect its employees from excessive sound levels in contravention of 29 C.F.R. § 1910.95(b)(1). That standard provides in pertinent part that:

"When employees are subjected to sound exceeding those listed in Table G-16, feasible administrative or engineering controls shall be utilized."

The union's right to contest a citation is provided for in 29 U.S.C. § 659(c) which specifies that:

"[I]f, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that *the period of time fixed in the citation for the abatement of the violation is unreasonable,* the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing . . . ." (Emphasis added.)

Because the clear language of the statute limits employee contests to the reasonableness of the *period of time* which is fixed in the citation for abatement, we hold that sufficiency of the so-called abatement plan cannot be *directly* contested by the union. *See Secretary v. Oil, Chemical and Atomic Workers International Union, AFL–CIO,* 2 OSAHRC 1243, 1244–1245 (1973); *Detroit Printing Pressmen Local No. 13, International Printing Pressmen v. Secretary,* 1 OSAHRC 1015 (1972).

Although the Act says nothing about an abatement plan, it is our opinion that the Secretary of Labor's general responsibility for enforcing compliance with the Act's requirements is adequate authority for reviewing an employer's abatement plan in those situations where abatement can only be achieved in phases over a relatively long period of time. This review enables the Secretary to ascertain whether an employer's efforts to come into compliance are proceeding at the proper pace and whether a reasonable time has been allowed for this purpose. Since the sole power to issue citations rests exclusively with the Secretary, his actions in exercising this authority could be made to depend on an employer's progress in abatement.

On the other hand, if the Commission issues an order respecting an abatement plan, the result could be to force an employer into a method of abatement which may subsequently prove to be inferior or infeasi-

1. Chairman Barnako does not agree to this attachment. [The Administrative Law Judge's decision is not included in the Appendix to this Court's opinion.]

ble. It might also subject the employer to an action for failure to abate even though he later discovers a superior abatement method which is different from the ordered plan. Furthermore, since 29 U.S.C. § 659(c) is specific in limiting employees or their representatives to an adjudication before the Commission on the reasonableness of the period of time fixed in a *citation* for abatement, we conclude that the union is not entitled to seek, and the Commission is not empowered to grant, a modification in the abatement plan.

In stating the above, we are not holding that a union is precluded from showing as an evidentiary matter, in those cases where an abatement plan is required by the citation, that abatement could be accomplished in less time than that provided in the plan. Such a right is clearly implied in the language of § 659(c). Moreover, in presenting its case the union may properly adduce evidence to show that the employer's abatement plan does not include all feasible abatement methods or controls that are presently available. Such specific methods or controls and the time required for their implementation are determinative of the length of time needed for abatement. Although, for the reasons given above, the Commission will not determine what specific measures should be prescribed by an abatement plan, it will consider this kind of evidence for the purpose of deciding the reasonableness of the abatement period set in a citation. In this case, however, the evidence indicates that the abatement period set by the Secretary is unreasonably *short*.

At the hearing which was conducted in February of 1974, an industrial hygienist employed by the complainant testified that it would take three to fifteen years to reduce the plant noise to the sound levels required by the standard. The complainant's area director agreed with this estimate. The supervisor of the employer's industrial hygiene section was of the opinion that a minimum of fifteen years would be required to achieve compliance with Table G-16. A noise reduction expert, who appeared for the union, testified that three to fifteen years was unreasonably long and that two years would be more realistic. He conceded, however, that reduction of noise levels to 90 dBA in all areas of the plant might not be feasible within that time.

In view of 29 U.S.C. § 659, the statutory authority for litigating issues in dispute before this Commission, we are satisfied that it is the Commission's duty to prescribe a reasonable period of time for abatement when that matter is in dispute and the credible evidence establishes that the time period specified on the contested citation is unreasonable. Accordingly, after considering all of the evidence concerning a reasonable abatement date, it appears that two years from the date that our order herein becomes final will afford a reasonable time for implementing the engineering and administrative controls necessary to achieve compliance with Table G-16. If the employer finds that it cannot comply within that time, a petition for modification of the abatement period can be filed with the Secretary of Labor in accordance with Rule 34 of the Commission's Rules of Procedure, 40 Fed.Reg. 3594 (1975). As a further point, we would suggest, but do not direct, that the employer and union attempt to resolve any further abatement disputes by consultation with each other. Such a procedure might prove more beneficial to both parties than continuing litigation and threats thereof.

Accordingly, the employer is ordered to implement feasible administrative or engineering controls to comply with 29 C.F.R. § 1910.95(b)(1) within two years of the date this order becomes enforceable.

FOR THE COMMISSION

/s/ William S. McLaughlin

Executive Secretary

Dated: May 25, 1976.

CLEARY, Commissioner, Dissenting:

I dissent because the majority errs as a matter of law in holding that the United Auto Workers is not empowered under section 10(c) of the Act to seek the Commis-

sion's review of the abatement plan and that the Commission is not empowered to modify an abatement plan.

As my colleagues observe, the Act says nothing expressly about the use of plans for accomplishing abatement. Rather, in section 9(a) concerning the issuance of citations and in section 10(c) in connection with contests by employees concerning abatement requirements, the terms of the Act speak only of time allowed for abatement. Yet in cases involving hazards to the safety and health of employees that may require elaborate engineering changes, the use of abatement plans has either implicitly or explicitly been recognized as a lawful approach to abatement under section 9(a) of the Act. There may be no other way of dealing with situations where the use of engineering controls is dependent upon the technology potential of employers in developing ways of alleviating hazards. *Cf. Society of Plastics Indus., Inc. v. OSHA,* 509 F.2d 1301, 1309 (2d Cir. 1975). My colleagues recognize the soundness of this approach.

The essential difficulty is that the Act does not plainly address the troublesome problem of abatement in these situations. The problem may be appropriately resolved by asking, as Justice Cardozo once did "which choice is it the more likely that Congress would have made," *Burnet v. Guggenheim,* 288 U.S. 280, 285, 53 S.Ct. 369, 370, 77 L.Ed. 748 (1933), should the use of the plans be permitted or not. Given the strong remedial objectives of the Act, I agree with my colleagues that section 9(a) should be read to permit the use of abatement plans in these engineering cases.

My point of departure from my colleagues is with their failure to recognize that section 10(c) suffers from the same drafting problem as section 9(a) concerning the setting of time limits for abatement. I find much force in the argument of the United Auto Workers that section 10(c) should not be read literally in determining the scope of review upon a contest filed by employees when a citation does not fix an abatement date for the violation, but rather provides for a plan for abating a violation. Again, in considering what choice Congress would have likely made if it addressed this problem it seems to me that this choice would be for review of the plan since employees are the major beneficiaries of this legislation and the plan.

As a matter of parallel construction, I add that Commission Rule 34, 29 CFR § 2200.34, unduly narrows the scope of review by the Commission under section 10(c) when an employer files a request for a change in abatement requirements. Rule 34 speaks only of relief in terms of changing abatement periods. Consistent with the foregoing, I submit that an employer may also seek a change in abatement requirements so long as the other tests in section 10(c) are made. It is for this reason that I find little force in the majority's argument that if the Commission were to issue an order concerning an abatement plan the result could be to force an employer into a method of abatement that may prove subsequently to be inferior or infeasible. I read section 10(c) to permit relief to an employer in such a situation.

The majority's literal reading of section 10(c) is also inconsistent with the Commission's earlier decision in *H. K. Porter Co., Inc.,* CCH 1973–74 OSHD para. 17,471, 1 BNA OSHC 1600 (No. 1210–P, 1974), holding that the Commission rather than the Secretary is empowered to review petitions by employers for changes in abatement requirements.

In reviewing an abatement plan, as in reviewing any other element of a citation, the Commission is expressly empowered to grant "appropriate relief" against an employer. *See General Electric Co., Inc.,* 3 BNA OSHC 1044, 1974–75 CCH OSHD Para. 19,567 at 23,369 (No. 2739, 1975) and *Van Raalte Co., Inc.,* No. 5007 (April 19, 1975). *Atlantic & Gulf Stevedores, Inc. v. O.S.H.R.C.,* 534 F.2d 541 (3d Cir. 1976).

To the extent that *Oil, Chemical & Atomic Workers International Union, AFL–CIO,* 2 OSAHRC 1243, 1244–1245 (1973) and *Detroit Printing Pressmen Local No. 13, International Printing Pressmen v. Secretary,* 1

OSAHRC 1015 (1972), may support the majority's position they should be reversed because they would deal inadequately with providing a remedy for review upon contest by employees of citations requiring extensive engineering changes. Stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision when adherence involves collision with an approach that is intrinsically sounder. *See Helvering v. Hallock,* 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604 (1940). In any event reliance upon *Oil, Chemical & Atomic Workers International Union, AFL–CIO,* 1 BNA OSHC 1104, 1971–73 CCH OSHD para. 15,447 (No. 562, 1973) is misplaced. That case concerned an employee contest under section 10(c) after the abatement date had elapsed. It involved an attempt to raise under section 10(c) what is properly the subject of an action concerning failure to correct a violation. Here, the abatement date has not passed, and a section 10(c) contest is the proper means of raising the abatement issue.

The majority's decision is inconsistent with the basic structure of the Act in having the Secretary's enforcement actions subject to review first by the Commission and then the Courts of Appeals.

Under the majority's opinion, the Secretary's approval of an abatement plan would appear to be a final agency action subject to judicial review under the Administrative Procedure Act itself. *Cf. Citizens Committee for Hudson Valley v. Volpe,* 425 F.2d 97, 101 (2d Cir.), *cert. denied* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970). This would be reviewable by a Federal district court. See, for example, *Sobell v. Reed,* 327 F.Supp. 1294 (S.D.N.Y. 1971). That such review would be outside the mainstream of judicial review by the Courts of Appeals of Commission decisions under section 11 of OSHA is an indication that the majority's result is at odds with the essential statutory scheme of having expeditious Commission review of the Secretary's actions before there would be resort to the courts. See Staff of Senate Comm. on Labor & Public Welfare, 92d Cong. 1st Sess. *Legislative History of the Occupational Safety & Health Act of 1970,* 463 (Comm. Print 1971).

The majority's interpretation of section 10 should be avoided because it may well raise a question of unreasonable or unequal treatment of employers and employees forbidden by the Fifth Amendment. Under section 10(a), an employer can contest before the Commission the abatement requirements of a citation—not just the period prescribed for abatement, but the whole citation. Yet, the majority reads section 10(c) as foreclosing a contest by employees, or their representatives, as to abatement requirements. There is a basic lack of fairness here.

Also consider this. Under section 8(f), an employee, or his representative can file a complaint with the Secretary of Labor requesting an inspection; under section 8(e) the employees have an opportunity of having a representative accompany the inspector during the inspection; but if a citation is issued as a consequence of the inspection, under section 10(c) the employees, or their representative are not empowered to challenge the abatement requirements of the citation. I submit that this reads section 10(c) in an arbitrary and capricious manner.

Turning to another matter, I differ with my colleagues in suggesting but not directing than the employer and United Auto Workers attempt to resolve any further abatement differences by consulting with each other. The reason assigned for the suggestion is that the procedure may prove more beneficial to both parties than other legislation. I submit that the reason is conjectural. Yet the record does support the need for an order requiring consultation because of the employer's refusal to disclose the contents of reports by its noise consultants to the union. This is precedent for an order of this kind. *See General Electric Co., supra.*

The gravity of the majority's errors can perhaps be best demonstrated by describing the plan that it declines to review.

The plan reads as follows:

1. The on-going Noise Control and Hearing Conservation Program outlined above will be continued and improved.
2. Noise control installation will be maintained and extended as feasible engineering controls are developed and become available.
3. Information from other stamping plants in the Division and from other Company locations will be considered for local application.
4. Development tests will be made as new ideas, proposals and designs are advanced.
5. Pipe manifolds will be installed on all major presses and machines for air valve exhaust by May, 1974.
6. Air value exhaust silencers will be installed on assembly lines by February, 1974.
7. Trim die scrap slides and hoppers on 31 major presses will be sound dampened by September, 1974.
8. Silencers will be installed on small part air blow-offs by September, 1973.
9. When new machinery is purchased, low noise emission will be specified. Major presses are currently being purchased with a maximum noise emission of 84 dBA. Air compressors are currently being purchased with maximum noise emission of 85 dBA.
10. Although the plant regularly assigns maintenance personnel to the repair of compressed air leaks, a more vigorous effort is being made to reduce leaks.
11. An acoustical enclosure will be provided in the pump house to reduce the exposure of the operators to excessive noise levels by October, 1973.

The Secretary considers the plan to be adequate. Although recognizing that the first four paragraphs are generalities, the Secretary points out that specific target dates are set for "utilization and implementation of engineering and administrative controls to reduce noise, which process is often by necessity, a trial and error proposition. Accordingly, if the target date, cannot be met . . . the employer may file a Petition for Modification of Abatement." June 1, 1974, was the proposed "abatement date" set by the Secretary, assertedly after a complete review of the employer's plan and plant layout.

The plan is so general that it could be construed as allowing abatement at the employer's convenience. It provides for installing various noise reducing devices but sets no goals for reduced noise levels. Also, the plan has no provision for noise surveys in order to assess effects of noise on personnel and progress in reducing noise.

The Secretary's Field Operations Manual provides a guide to the multistep abatement of hazards such as noise. It states that the Area Director, in issuing the citation, should set a short-range date requiring prompt temporary protection consisting of protective equipment and short-range administrative controls. The approved "plan" has no provision whatsoever for any administrative controls.

The plan calls for installation of various devices on "31 major presses," on "assembly lines" and in other locations, by specified dates. But, there is no predicted dBA level to be achieved by those dates. In addition, 31 presses is a fraction of the total in the plant. The Secretary regards such "trial and error" techniques as reasonable. The union's expert witness [2] asserts that a plan should provide for noise reductions to set levels and that some presses, for example, can result in a 10 dBA reduction through the use of known methods.

The same witness states that the first step in a plan submitted to remedy a noise hazard is a full description of that hazard. He asserts that a complete noise survey is a

**2.** This witness is a manager of a firm engaged in industry hearing conservation, has authored numerous industrial acoustic plans, and is listed in *American Men of Science* and *Who's Who in the West.*

prerequisite to a plan. This survey, in turn, allows for more meaningful goals to be set in terms of dBA reduction. The absence of a detailed timetable for achieving specific reduced levels makes it nearly impossible to consider any subsequent petition for modification of abatement filed by an employer. The Commission is unable to assess progress if no goals have been set.

The plan fails to deal with one source of noise, the tow truck operations, which the Secretary identified as a major noise source. Only some noise producing aspects of presses are treated by the plan. The Secretary's witness states that the worst conditions are treated, but he states that one of the two major noise sources is the stamping operation. When asked where the plan deals with this hazard he replied, "Nowhere."

The majority allows the employer two years from the date of the Commission's order to comply with this general plan. We are not told how the two years is arrived at except that it is upon consideration of all of the evidence concerning a reasonable abatement date. I submit that more of a factual predicate is needed than this to pass muster under 5 U.S.C. section 558. Also, there should be a painful awareness that more than two years have elapsed since the testimony was taken in this case. This delay should be considered in framing any order. Section 10(c) does not toll the time for abatement during the pendency of a proceeding commenced by employees. *Cf. Carl A. Morse of Illinois, d/b/a Diesel Constr. Co. v. Brennan,* CCH OSHD para. 16, 885 (N.D. Ill. 1973).